[No. A101034. First Dist., Div. One. May 11, 2004.],

THE PEOPLE, Plaintiff and Respondent, v.
DARRELL CALHOUN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

*Under California Rules of Court, rules 976(b) and 976.1, only the Facts, part I of the Analysis, and the Conclusion are certified for publication.

**COUNSEL**

Ozro William Childs for Defendant and Appellant.

Bill Lockyer, Attorney General, and Jeffrey M. Laurence, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**STEIN, J.**—Darrell Calhoun appeals from a judgment committing him to Atascadero State Hospital for two years after a jury found him to be a sexually violent predator (SVP), as defined by Welfare and Institutions Code section 6600 (Sexually Violent Predator Act or SVPA).

In the published portion of this opinion, part I, we shall hold that in a jury trial pursuant to the SVPA, the defendant is entitled to six peremptory challenges, as provided in California Code of Civil Procedure section 231, subdivision (c). We shall further hold that neither state nor federal due process or equal protection principles require that state law provide the defendant in such a proceeding the same number of peremptory challenges as in most criminal cases.

We will address defendant's remaining contentions in the unpublished portion of this opinion, and shall affirm the judgment.

## FACTS

Two experts, Dr. Padilla and Dr. Starr, testified for the prosecution that defendant met the statutory requirements for commitment as a sexually violent predator. Defendant had two qualifying prior convictions for forcible rape, in 1989 and 1993.

In 1989, after Ada R. refused defendant's request for consensual sex, defendant beat her with a hammer, forced her to drive to a secluded location, and again attacked her with the hammer to obtain her compliance. He repeatedly forcibly raped and sodomized her. He continued his sexual assaults upon her, even after she was forced to defecate in the car. After several hours, he tied her up, forced her into the trunk of the car, and drove to Oakland, where he resumed forcibly raping and sodomizing her. Later, he drove around with her, and became apologetic. She eventually escaped.

In 1993, defendant approached Catherine K. on the street and offered her drugs in exchange for sex. When she refused, he told her he had a gun and forced her into the basement of a nearby house. He threatened to kill her, and repeatedly raped her and forced her to perform oral copulation. He did not release her until the next morning.

Drs. Padilla and Starr also noted several other sexual offenses. In 1993, a few hours before the assault on Catherine K., defendant entered the home of L.M. He threatened her with a box cutter and attempted to sexually assault her. The attempt was thwarted when defendant heard her children making noise, and he fled out the back window. This attempted assault, and the forcible rape and sexual assault on Catherine K., occurred only five months after he was released on parole for the rape of Ada R. Drs. Padilla and Starr also referred to additional uncharged incidents involving a victim named Debbie and two others.

Both doctors diagnosed defendant as suffering from paraphilia not otherwise specified, alcohol and cocaine abuse, personality disorder not otherwise specified with antisocial features, and various learning disorders. They both testified that defendant's score on the Static 99 test fell within the highest range for likelihood of reoffending. They both also identified numerous factors in defendant's history that distinguished him from a person who committed rape, but who would not be a sexually violent predator within the meaning of the SVPA. Dr. Starr testified that in her opinion, it was not even a close call, and that defendant was very likely to commit new sexually violent predatory offenses if released.

The defense also presented two experts, Dr. Donaldson and Dr. Shore. Dr. Donaldson testified that defendant did not suffer from paraphilia, although

Dr. Donaldson used a different definition than the one used in the DSM. In Dr. Donaldson's opinion, defendant had no strong drive to rape. He preferred consensual sex, but lacked the skills to acquire it. Based upon the Static 99 and Dr. Donaldson's clinical and practical judgment, defendant would be at high risk of reoffending if returned to his old community.

Dr. Shore testified that defendant did not suffer from paraphilia. He did not commit rapes out of any compulsion or drive for nonconsensual sex. Instead, as a result of severe cognitive deficits, he misunderstood his relationships with his victims, and believed the sex was consensual. Dr. Shore, however, also found that if released without supervision, defendant likely would rape again.

## ANALYSIS

## I.

### Peremptory Challenges

█ Section 231 of the Code of Civil Procedure[1] specifies that in a criminal case, where the penalty may be death or life in prison, each side is allowed 20 peremptory challenges. In most other criminal cases the parties are each allowed 10. (§ 231, subd. (a).) In civil cases, and in criminal cases where the offense is punishable with a maximum term of imprisonment of 90 days or less, the parties are allowed six. (§ 231, subds. (b) & (c).)

The trial court ruled that a commitment proceeding pursuant to the SVPA is a special proceeding of a civil nature, and therefore the parties were entitled to six peremptory challenges pursuant to subdivision (c) of section 231. Defendant contends that the court should instead have applied subdivision (a) because a proceeding under the SVPA is more like a criminal case than a civil proceeding. He further contends that state and federal constitutional principles of due process and equal protection require that he be allowed the same number of peremptory challenges as are provided to a defendant in the trial of a criminal offense.

### 1. *Section 231*

The SVPA does not specify the number of peremptory challenges that are available to the parties, and no published decision has yet resolved the issue. Nevertheless, the trial court's conclusion that subdivision (c) of section 231 applies to a jury trial of a petition pursuant to the SVPA logically follows

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

from decisions of our Supreme Court and the courts of appeal, which have held that section 231, subdivision (c) applies to "special proceedings" that are civil in nature; and that a sexually violent predator trial is a civil proceeding, or a special proceeding of a civil nature.

In *People v. Stanley* (1995) 10 Cal.4th 764 [42 Cal.Rptr.2d 543, 897 P.2d 481] (*Stanley*), the court reiterated its long-held view that in a civil proceeding, or a special proceeding that is civil in nature, the number of peremptory challenges available to the parties is the same as that in civil cases, even where the special proceeding arises in the context of a criminal trial. In *Stanley*, the defendant argued that, in a proceeding to determine his competence to stand trial in a capital case, the trial court erred by failing to accord the parties the same number of peremptory challenges as would be available to a defendant in a criminal trial of the underlying offense. The court found the argument "meritless." (*Id.* at p. 807.) It explained: " 'A proceeding to determine the mental competence of a criminal defendant to stand trial pursuant to . . . [Penal Code] section 1368 is a special proceeding civil in nature.' [Citations.] Consistent with this view, this court has held the parties in a section 1368 proceeding are entitled only to the number of peremptory challenges provided for in civil trials, even if the underlying offense is punishable by death or life imprisonment. [Citation.]" (*Ibid.*)[2]

Both our Supreme Court and the courts of appeal have consistently held that the SVPA is a *civil* commitment scheme. The Legislature declared its intent was to establish a "civil commitment" scheme applicable to persons who are to be viewed "not as criminals, but as sick persons" (Welf. & Inst. Code, § 6250) when it enacted the SVPA. (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1171 [81 Cal.Rptr.2d 492, 969 P.2d 584] (*Hubbart I*), citing Stats. 1995, ch. 763, § 1, p. 5921; Sen. Com. on Crim. Procedure, Analysis of Assem. Bill. No. 888 (1995–1996 Reg. Sess.) July 11, 1995.) The legislative intent to create a civil commitment scheme is further reflected in the decision to place the SVPA "in the Welfare and Institutions Code, surrounded on each side by other schemes concerned with the care and treatment of various mentally ill and disabled groups. (See, e.g., [Welf. & Inst. Code] §§ 5000 [LPS Act], 6500 [Mentally Retarded Persons Law].)" (*Hubbart I, supra,* at p. 1171.) The courts have also recognized these other commitment schemes to be " 'civil in nature' (*In re Bevill* (1968) 68 Cal.2d 854, 858 [69 Cal.Rptr. 599, 442 P.2d 679] [Mentally Disordered Sex Offenders Act] or as 'special proceedings of a civil nature' (*Gross v. Superior Court* (1954) 42 Cal.2d 816, 820 [270 P.2d 1025] [sexual psychopath proceedings of former § 5500 et seq.].)" (*Leake v. Superior Court* (2001) 87 Cal.App.4th 675, 680 [104 Cal.Rptr.2d 767] (*Leake*).) In *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 250 [127

---

[2] The rules of civil discovery have also been held to apply in a competence trial. (*Baqleh v. Superior Court* (2002) 100 Cal.App.4th 478, 490–491 [122 Cal.Rptr.2d 673].)

Cal.Rptr.2d 177, 57 P.3d 654] (*Cooley*), the court again described SVPA proceedings as "civil in nature," and held that Evidence Code section 115 applied, but that the applicable standard of proof for a probable cause hearing fell within the "except as otherwise provided" proviso. Our Supreme Court has also rejected the contention that, despite its civil label, the SVPA is so punitive in purpose and effect that it imposes additional criminal punishment, in violation of the ex post facto clause, when commitment is based on offenses committed before its effective date. (*Hubbart I, supra,* at pp. 1170–1179.)

At least two court of appeal decisions have also reached the conclusion that proceedings under the SVPA are special proceedings of a civil nature, and therefore civil, not criminal, discovery rules apply. (*People v. Superior Court (Cheek)*(2001) 94 Cal.App.4th 980, 988 [114 Cal.Rptr.2d 760] (*Cheek*); *Leake, supra,* 87 Cal.App.4th at p. 680; see also *Sporich v. Superior Court* (2000) 77 Cal.App.4th 422, 427 [91 Cal.Rptr.2d 752] [court assumes Civil Discovery Act applies to a request for an additional mental examination prior to a SVPA proceeding after defendant has already been examined by two psychologists or psychiatrists].) In *Cheek, supra,* the court explained: "The Civil Discovery Act applies in both 'a civil action and a special proceeding of a civil nature.' [Citation.] A special proceeding of a civil nature is '[a] type of case which was not, under the common law or equity practice, either an action at law or a suit in equity.' [Citations.] 'A special proceeding has reference only to such proceedings as may be commenced independently of a pending action by petition or motion upon notice in order to obtain special relief.' [Citation.] [¶] The California Supreme Court has stated that a proceeding under Welfare and Institutions Code section 1800, in which the California Youth Authority petitions the court to retain a physically dangerous ward beyond his or her release date in order to provide treatment for the cause of the dangerousness, has a 'demonstrably civil purpose' and hence is a special proceeding of a civil nature. [Citation.] *Similarly, an SVPA commitment proceeding is a special proceeding of a civil nature, because it is neither an action at law nor a suit in equity, but instead is a civil commitment proceeding commenced by petition independently of a pending action.* As in other special proceedings of a civil nature, the Civil Discovery Act is applicable." (*Cheek,* at p. 988, italics added.) In *Leake,* the court also held that "the Legislature designed the SVPA as a civil action or special proceeding of a civil nature," and therefore the Civil Discovery Act of 1986 applied. (*Leake, supra,* at p. 680.)

The major premise established by *Stanley, supra,* 10 Cal.4th 764, is that section 231, subdivision (c), which provides for six peremptory challenges in civil cases, applies to "special proceedings" that are civil in nature, even where the civil proceeding relates to competence to stand trial for a serious criminal offense. The minor premise, established by the express declaration of

the Legislature in the SVPA itself, by the holdings in *Leake, supra,* 87 Cal.App.4th 675 and *Cheek, supra,* 94 Cal.App.4th 980, and indirectly by the recognition of the civil purpose and effect of the SVPA in *Hubbart I, supra,* 19 Cal.4th 1138, is that a commitment under the SVPA is a special proceeding that is civil in nature. The conclusion that logically follows is that subdivision (c) of section 231 applies to a SVPA proceeding, and therefore defendant received all the peremptory challenges to which he is entitled by statute.

Defendant attempts to evade the logical force of this syllogism by arguing that, unlike the competence trial at issue in *Stanley, supra,* 10 Cal.4th 764, the SVPA expressly provides for procedural protections, such as a unanimous verdict and the beyond a reasonable doubt standard of proof, that are normally provided for only in a criminal trial. (Welf. & Inst. Code, § 6603.) He suggests that the incorporation of these criminal procedural protections into the statutory scheme compels the conclusion that despite its civil "label," a proceeding under the SVPA is really more akin to a criminal trial and the Legislature must have intended that a defendant also receive the same number of peremptory challenges as a defendant in a criminal prosecution. In *Hubbart I, supra,* 19 Cal.4th 1138, albeit in the context of an ex post facto challenge, the court rejected a similar contention that the incorporation of some criminal procedural safeguards into the SVPA compelled the conclusion that the scheme was civil in name only. As the court stated in *Hubbart I*: "[T]he use of procedural safeguards traditionally found in criminal trials [does] not mean that commitment proceedings [are] penal in nature." (*Hubbart I,* at p. 1174, fn. 33; see also *Kansas v. Hendricks* (1997) 521 U.S. 346, 364–365 [138 L.Ed.2d 501, 117 S.Ct. 2072][3] ["that Kansas chose to afford such [criminal] procedural protections does not transform a civil commitment proceeding into a criminal prosecution"]; *Cooley, supra,* 29 Cal.4th at p. 252 [civil character of SVPA commitment scheme does not preclude incorporation of some criminal procedural safeguards]; see also *People v. Beeson* (2002) 99 Cal.App.4th 1393, 1410 [122 Cal.Rptr.2d 384]

---

[3] In *Kansas v. Hendricks, supra,* 521 U.S. 346, the court rejected the contention "that the State's use of procedural safeguards traditionally found in criminal trials makes the proceedings here criminal rather than civil. In *Allen,* we confronted a similar argument. There, the petitioner 'place[d] great reliance on the fact that proceedings under the Act are accompanied by procedural safeguards usually found in criminal trials' to argue that the proceedings were civil in name only. *Id.,* at p. 371. We rejected that argument, however, explaining that the State's decision 'to provide some of the safeguards applicable in criminal trials cannot itself turn these proceedings into criminal prosecutions.' *Id.,* at p. 372. The numerous procedural and evidentiary protections afforded here demonstrate that the Kansas Legislature has taken great care to confine only a narrow class of particularly dangerous individuals, and then only after meeting the strictest procedural standards. That Kansas chose to afford such procedural protections does not transform a civil commitment proceeding into a criminal prosecution." (*Id.* at pp. 364–365.)

[fact that some criminal procedural protections are incorporated in a proceeding to extend the commitment of a mentally disordered offender does not compel conclusion that proceeding is criminal or that all criminal procedural safeguards must apply].) We therefore will not infer that the Legislature had any intention of transforming a commitment scheme it declared to be civil into a criminal proceeding for the purpose of determining how many peremptory challenges are available to the parties, simply because it incorporated some criminal standards into the SVPA. Indeed, the contrary inference we draw is that, by declaring its intent that the commitment scheme be civil, and expressly providing for some criminal procedural standards to apply, but not others, the Legislature evinced its intent that, unless it otherwise expressly provided, rules governing civil proceedings would apply.

We also note that the SVPA was modeled upon a civil commitment scheme adopted in the State of Washington. (See Sen. Com. on Appropriations, Rep. on Assem. Bill No. 888 (1995–1996 Reg. Sess.) July 17, 1995.) At the time the bill to enact the SVPA was pending in the California Legislature, the Washington State Supreme Court, in 1993, had filed a comprehensive decision, *In re Young* (1993) 122 Wn.2d 1 [857 P.2d 989], which rejected various due process and ex post facto challenges to the Washington scheme. The Washington court also specifically rejected the contention that the defendant should have the same number of peremptory challenges provided under Washington law to criminal defendants in capital cases because the consequence of commitment was equivalent to "indefinite incarceration." The court held *the parties were entitled only to the same number of challenges provided for civil juries* because the proceedings "are civil, not criminal, in nature." (*In re Young, supra,* 857 P.2d at pp. 1012–1013.) Our state Legislature was clearly aware of this decision when it enacted the SVPA, because the legislative history contains several references to the decision in *In re Young, supra,* albeit primarily in the context of analyzing potential due process and ex post facto issues raised by the proposed statutory schemes. This legislative history reinforces the inference that our state Legislature intended a defendant in an SVPA proceeding to have the same number of peremptory challenges as are available in other special proceedings that are civil in nature.

█ For all of the foregoing reasons, we conclude that a proceeding under the SVPA is a special proceeding of a civil nature, and therefore pursuant to subdivision (c) of section 231, defendant was entitled to six peremptory challenges.

## 2. *Due Process*

Defendant next argues that, regardless of the applicable statutory provisions, state and federal constitutional due process principles require that he be

granted the same number of peremptory challenges as are provided to criminal defendants. His reliance upon *People v. Burnick* (1975) 14 Cal.3d 306 [121 Cal.Rptr. 488, 535 P.2d 352] (*Burnick*) and *People v. Feagley* (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373] (*Feagley*) is misplaced. In those cases, the court held that although a commitment under the version of the Mentally Disordered Offender statute then in effect was civil, in light of the deprivation of liberty for an indeterminate period under conditions often indistinguishable from incarceration in prison, due process required that the offender is entitled to the right to proof beyond a reasonable doubt (*Burnick*, at p. 322) and to a unanimous verdict (*Feagley*, at p. 352). Defendant contends these cases stand for the proposition that a defendant in an SVPA proceeding " 'is entitled to the *full panoply of the relevant protections which due process guarantees in state criminal proceedings. He must be afforded all those safeguards which are fundamental rights and essential to a fair trial.*' " (*Burnick*, at pp. 317–318.)

The primary flaw in defendant's argument is that " '[n]either the United States Constitution nor the Constitution of California . . . requires that Congress or the California Legislature grant peremptory challenges to the accused . . . or prescribes any particular method of securing to an accused . . . the right to exercise the peremptory challenges granted by the appropriate legislative body. [Citations.] *The matter of peremptory challenges rests with the Legislature, limited only by the necessity of having an impartial jury.*' " (*People v. Brown* (1996) 42 Cal.App.4th 461, 475–476 [49 Cal.Rptr.2d 652].) In *Conservatorship of Gordon* (1989) 209 Cal.App.3d 364 [257 Cal.Rptr. 365] (*Gordon*), the court rejected an analogous contention, based upon *Burnick, supra*, 14 Cal.3d 306, and *Feagley, supra*, 14 Cal.3d 338, that because state constitutional principles of due process required that a conservatee have the right to a jury trial, unanimous verdict, and proof beyond a reasonable doubt, the conservatee must also be entitled to the same number of peremptory challenges as provided to a criminal defendant. The court explained that the right and number of peremptory challenges is "not a constitutional necessity but a statutory privilege," and "peremptory challenges are not mandated by due process." (*Gordon*, at pp. 368–369.) Therefore, the conservatee's due process rights were not violated when the court provided only six peremptory challenges pursuant to section 231, subdivision (c). (*Ibid.*)

The United States Supreme Court also has "long recognized the role of the peremptory challenge in reinforcing a defendant's right to trial by an impartial jury, [but also] that such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, *peremptory challenges are not of federal constitutional dimension.*" (*United States v. Martinez-Salazar* (2000) 528 U.S. 304, 311 [145 L.Ed.2d 792, 120 S.Ct. 774], italics added; see also *Ross v. Oklahoma* (1988) 487 U.S. 81, 90–91 [101 L.Ed.2d

80, 108 S.Ct. 2273] [no federal due process violation where state law forced use of a peremptory challenge to cure a trial court's error in denying a challenge for cause].)

■ The Legislature has clearly expressed its intention that an SVPA proceeding be a civil proceeding, and we have found that defendant was accorded all the peremptory challenges to which he was entitled under state law. Neither state nor federal due process principles compel that he be granted any specific number of challenges, and in the absence of some demonstration that he was deprived of his right to an impartial jury, no due process violation occurred.

3. *Equal Protection*

Nor is there any merit to defendant's assertion that allowing him only six peremptory challenges deprives him of equal protection of the laws. Defendant argues that, under the SVPA, if the allegations of the petition are found true, he faces a two-year period of involuntary commitment, and therefore he should be entitled to the same number of peremptory challenges provided for a defendant in a criminal case where, as the result of a conviction, the defendant faces two years of imprisonment. (§ 231, subd. (a).)

His reliance upon dicta in *People v. Yates* (1983) 34 Cal.3d 644, 652–653 [194 Cal.Rptr. 765, 669 P.2d 1], in which the court observed that an equal protection problem might exist if it construed former Penal Code section 1070 to allow a lesser number of challenges to a defendant who faces a greater period of confinement than a similarly situated person charged under a different criminal statute, is misplaced because a person facing a commitment proceeding under the SVPA is simply not "similarly situated" to a person facing criminal prosecution. "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549]; see also *Cooley, supra,* 29 Cal.4th at pp. 253–254.) Criminal prosecution and incarceration serves the purposes of punishment and deterrence. By contrast civil commitment under the SVPA is linked to management and care of a person rendered dangerous due to a mental disorder. Sexually violent predators are segregated from the general prison population and are under the supervision of the Department of Mental Health. (*Hubbart I, supra,* 19 Cal.4th at pp. 1175–1176.) Moreover, unlike a criminal prosecution that affixes criminal liability and punishment for a particular act, the purpose of an SVPA proceeding is to determine whether a person suffers from a certain mental disorder that is subject to change, and must be redetermined at least every two years. (See *id.* at pp. 1170–1179 [court

enumerates differences in purpose and procedures between criminal prosecution and an SVPA proceeding].) A person alleged to be a sexually violent predator and a criminal defendant therefore are simply not similarly situated, and equal protection principles do not require that a sexually violent predator defendant be provided the same number of peremptory challenges as a defendant facing criminal prosecution.

## II.–V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## CONCLUSION

The judgment is affirmed.

Marchiano, P. J., and Swager, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 25, 2004.

---

*See footnote, *ante*, page 519.