[No. H027346. Sixth Dist. Nov. 4, 2004.]

DAVID LITMON, JR., Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent,
THE PEOPLE, Real Party in Interest.

[No. H027353. Sixth Dist. Nov. 4, 2004.]

JOSEPH JOHNSON, JR., Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent,
THE PEOPLE, Real Party in Interest.

COUNSEL

Francis R. Cole for Petitioner David Litmon, Jr.

Jose R. Villarreal, Public Defender, Brian J. Matthews, and Andrea E. Flint, Deputy Public Defenders, for Petitioner Joseph Johnson, Jr.

No appearances for Respondent.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Moona Nandi, Deputy Attorneys General, for Real Party in Interest.

OPINION

**McADAMS, J.**—Joseph Johnson, Jr., and David Litmon, Jr., each request the issuance of a writ of mandate directing the trial court to vacate its order consolidating for trial two successive recommitment petitions filed pursuant to Welfare and Institutions Code section 6600 et seq.,[1] the Sexually Violent Predator Act (SVPA). The question presented is whether the trial court has the power to consolidate such petitions. Although we conclude that the trial court does have the inherent power to consolidate SVPA petitions for trial, we hold that the exercise of that power in the present cases, where trials on the earlier petitions were delayed, over petitioners' objections, solely to accommodate consolidation, constituted error. We therefore will issue peremptory writs of mandate vacating the respondent superior court's orders of consolidation and directing respondent court to calendar the first petition for recommitment in each case for trial forthwith.

---

[1] All further unspecified code sections refer to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Johnson Matter*

Petitioner Johnson was first committed as a sexually violent predator (SVP) on May 25, 2000.[2] On April 25, 2002, the People filed a new petition to extend Johnson's commitment for another two years, until May 24, 2004.[3] The probable cause hearing commenced on May 21, 2002. After numerous continuances, the hearing concluded on June 27, 2003, with a finding of probable cause. On that day, Johnson demanded a jury trial and, in its order finding probable cause, the court set a trial date of April 5, 2004.

On February 17, 2004, while the first recommitment petition was still pending, the People filed a second recommitment petition to extend Johnson's commitment for another two years, until May of 2006, alleging that Johnson's "current commitment" was due to expire on May 24, 2004, even though no commitment trial had yet been held. On March 5, 2004, the People submitted the matter to the trial court for a finding of probable cause on the basis of one evaluation by Dr. Korpi and two by Dr. Jeko; the doctors' reports were admitted into evidence. At that point, Johnson "agreed to [a] continuance" of the probable cause hearing, apparently to cross-examine the experts. The court continued the case to April 2, 2004, for the People's motion to consolidate trial on the two petitions.

The People filed a written motion to consolidate the first and second petitions on March 8, 2004. On March 18, 2004, the court held a hearing and ruled upon previously filed motions in limine relating to trial on the first petition. It also continued proceedings on the first petition for a further readiness hearing on April 1 and for trial on April 5.

On March 24, 2004, the People filed a supplemental motion to consolidate. On March 29, Johnson's counsel filed a written opposition to the motion to consolidate. On April 2, 2004, over Johnson's objection, the court granted the People's motion to consolidate; vacated the previously set April 5 trial date; set the continuation of the probable cause hearing on the second recommitment petition for April 30 and May 21; and ordered a new trial date of May 24, 2004, the last day of the underlying commitment period. Thereafter, the court granted Johnson's request that the consolidated trial be held on September 1, 2004, instead of May 24.

---

[2] On August 22, 2001, we affirmed the trial court's order committing Johnson as an SVP in an unpublished opinion, *People v. Johnson*, H021605.

[3] On our own motion, we take judicial notice of the superior court files in the cases before us. (Evid. Code § 452, subd. (d).)

## 2. *The Litmon Matter*

Petitioner Litmon was first committed as a sexually violent predator on May 2, 2000.[4] His commitment was set to expire on May 2, 2002. On April 24, 2002, the People filed a petition to recommit Litmon for another two years, until May 2004.

The probable cause hearing began on May 2, and concluded on July 19, 2002, with a finding of probable cause. Jury trial on the recommitment petition was set for November 12, 2002. On October 25, however, Litmon filed a *Faretta* motion. (*Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525].) It was heard and granted on October 30; the November 12 trial date was vacated and the case was continued to January 10, 2003, for trial setting. Over the next two months, motions were heard. Then, on March 28, 2003, the court vacated the probable cause finding pursuant to *Cooley v. Superior Court* (2002) 29 Cal.4th 228 [127 Cal.Rptr.2d 177, 57 P.3d 654]. New doctors' evaluations were ordered completed by May 9, 2003, and a new probable cause hearing was to be conducted on a date agreeable to the parties. In early April, the People informed the court that one of the original evaluators was no longer on the SVP panel, and a new evaluator was appointed. Then, on July 17, 2003, Litmon's previously appointed expert was killed in a traffic collision. A new expert was appointed on October 1, 2003.

The probable cause hearing was held on July 11, October 9, and October 23, 2003. On November 11, 2003, the court found probable cause; Litmon demanded a jury trial; and the court set the trial for August 2, 2004.

On November 23, 2003, Litmon filed a written motion for a jury trial within 60 days. The People opposed the motion. The motion was denied after a hearing on December 19, 2003; however, the court placed the matter on the master trial calendar for February 23, 2004, the date on which Litmon indicated he would be ready.

On February 23, 2004, while the first re-commitment petition was still pending, the People filed a second recommitment petition to extend Litmon's commitment for another two years, until May of 2006, alleging that Litmon's "current commitment" was due to expire on May 2, 2004, even though no commitment trial had yet been held. In the meantime, Litmon's case remained on the master trial calendar and was trailed from February 23, to February 25, to February 27, to March 1 and to March 8, 2004.

---

[4] On September 5, 2002, we affirmed the trial court's order committing Litmon as an SVP in an unpublished opinion, *People v. Litmon*, H023263.

On February 27, 2004, the People filed an in limine motion. That same day, the same deputy who signed the motion wrote a note, which was included in the court file, stating: "Mr. Litmon's commitment expires on May 2, 2004. The probable cause hearing has to start within 10 days of the court's initial review of the evaluations ([] 6601.5), unless time is waived. [¶] Because Mr. Litmon is pending trial on his 2000 petition as an SVP, if the court finds probable cause, the People can make a motion to consolidate. So, the sooner the better for purposes of judicial economy."

Also on February 27, the second petition was transferred to a trial department for a probable cause hearing. Litmon was advised of section 6604 and waived the "statutory time for probable cause hearing." New evaluations submitted by the People, dated December 19, 2003 and January 14, 2004, were marked and admitted into evidence. At this point, Litmon requested a continuance so that he could cross-examine the doctors. Trial on the first petition remained as set on the master trial calendar.

On March 8, 2004, the People filed a written motion to consolidate the two recommitment petitions for trial. On March 12, the probable cause hearing was continued to April 30 and May 21, 2004, for cross-examination of the experts by petitioner. Trial on the first petition was trailed to March 15, at which time the master trial calendar court was also to rule on Litmon's renewed speedy trial motion, and the People's motion to consolidate was continued to April 2, 2004. On March 8, the People filed supplemental points and authorities in support of the motion to consolidate. On March 30, counsel appointed to represent Litmon on the motion to consolidate filed an opposition memorandum.

On April 2, 2004, over Litmon's objection, the trial court ordered consolidation of the two recommitment petitions for trial, maintained the previously set dates of April 30 and May 21, 2004, for the continuation of the probable cause hearing on the second petition, vacated Litmon's April 5 appearance in the master calendar court and set the consolidated trial for May 24, 2004—22 days beyond the expiration of the first recommitment period. At Litmon's request, trial was then continued to June 1, 2004.

On April 23, 2004, Johnson and Litmon filed petitions for writ of mandate challenging the trial court's consolidation orders. On May 19, 2004, we stayed all further proceedings in the trial court, ordered that the two original writ matters be considered together for purposes of issuance of an order to show cause, briefing, oral argument and decision, and issued an order to show cause why a peremptory writ should not issue as requested in each case.

## PETITIONERS' CONTENTIONS

Petitioners' primary contention is that the trial court does not have the inherent power to consolidate recommitment petitions under the SVPA, nor does it have any statutory power to consolidate, because a commitment under the SVPA is a special proceeding civil in nature to which neither Penal Code section 954 nor Code of Civil Procedure sections 1048 or 187 applies, and the SVPA itself does not provide for consolidation. The People concede Code of Civil Procedure section 1048 and Penal Code section 954 do not apply, but argue that consolidation is authorized in SVP cases by Code of Civil Procedure section 187 and the court's inherent power to fashion procedures that enable it to function properly.

In response, petitioners argue that the consolidation of recommitment petitions "is in direct contradiction to the procedures" set forth in the SVPA and contrary to the Legislature's intent. Furthermore, they argue that because consolidation is neither necessary nor proper in SVP cases, but rather operates to deny an SVP his or her right to a jury trial on each petition, the power to consolidate is not found within the court's inherent powers nor authorized by Code of Civil Procedure section 187.

In addition, petitioners contend that consolidation is not appropriate in SVP proceedings because the petitions do not involve the same facts and issues, since each requires proof of petitioner's mental state during the different time periods covered by the petitions. They also argue that consolidation will prejudice them, because they will have to defend themselves in a trial in which two sets of evaluators will testify about two different time periods, and because of "the prejudicial effect of facts covering both petitions."

## DISCUSSION

At the outset, we address several threshold matters to explain why the questions presented are cognizable in this court. Next, to establish the proper framework for our analysis, we describe the SVPA's statutory scheme, the legislative intent behind the Act and the issue to be tried at a recommitment trial. We then discuss the underlying problem of delay in bringing SVPA recommitment petitions to trial and whether consolidation of petitions can or should be used to solve the problem of delay. Finally, we apply the principles we have discussed in our analysis to explain why we believe consolidation of successive SVP petitions is error in these cases.

## I. Threshold Considerations

### A. *The Availability of Writ Relief*

■ Ordinarily, with respect to interim orders such as the orders of consolidation in these cases, writ review is not available because such orders are reviewable on appeal from the final judgment. However, "when the remedy by appeal would be inadequate or the issues presented are of great public importance and must be resolved promptly," mandate is available. (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 113 [40 Cal.Rptr.2d 839, 893 P.2d 1160].) The issue raised in these writ petitions meets that test. The question whether serial SVP petitions for re-commitment may be consolidated for trial is one of first impression and writ review is appropriate to provide guidance to the bench and bar on SVPA trial procedures. (*Anderson v. Superior Court* (1989) 213 Cal.App.3d 1321, 1328 [262 Cal.Rptr. 405]; *People v. Superior Court* (*Howard*) (1999) 70 Cal.App.4th 136, 147 [82 Cal.Rptr.2d 481].)

### B. *Mootness*

Insofar as petitioners have already served the two-year-commitment periods on the first petitions without a trial on the merits, the consolidation issue raised in this writ proceeding is technically moot: whether a consolidated trial is permissible or not, the outcome of the trial cannot give petitioners back the two years they have already served. Nevertheless, we perceive from the extant case law that delays arising from pretrial litigation of unresolved issues in SVP cases are not uncommon, and consolidation may be viewed by some trial courts and prosecutors as the solution to an ongoing problem. (See, e.g., *Cheek v. Superior Court* (2002) 103 Cal.App.4th 520, 523 [126 Cal.Rptr.2d 820] [observing that "[b]oth petitions to extend Cheek's commitment are still pending, and have been consolidated for trial"].) In our view, this writ proceeding "presents an important question affecting the public interest that is ' " 'capable of repetition, yet evading review.' " ' " (*NBC Subsidiary (KNBC-TV), Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1190 [86 Cal.Rptr.2d 778, 980 P.2d 337] at fn. 6, quoting from *Press-Enterprise Co. v. Superior Court* (1986) 478 U.S. 1, 6 [92 L.Ed.2d 1, 106 S.Ct. 2735].) Therefore, it is appropriate for us to resolve the question presented, despite its mootness.

### C. *Waiver*

In petitioner Johnson's case, in June 2003, a trial date of April 5, 2004, was selected for trial on the first petition for recommitment—over 23 months after the petition was filed on April 25, 2002. He objected to the vacating of his April 5 trial date and the setting of a consolidated trial on the first and second petitions on the last day of the recommitment period underlying the first petition.

In petitioner Litmon's case, over 23 months after the filing of the first petition on April 24, 2002, *no* trial date had been set on the first petition for recommitment. In November 2003, the trial court had attempted to set a trial date in August 2004—three months past the expiration of the two-year period of confinement under the unadjudicated commitment. When Litmon objected, the trial court sent his case back to the master calendar court on February 23, 2004, the date Litmon had said he would be ready for trial, where his case was put in a trailing posture—that is, waiting for a court to become available. When it became apparent that trial on the first petition would be continued until the second petition was ready to be tried with it, Litmon demanded an immediate trial on the first petition. Thus, he twice objected to the setting of a trial on a date outside the two-year confinement period. Although the People maintain that Johnson and Litmon were responsible for most of the continuances in their cases, the trial court record demonstrates only that Johnson's April 2004 trial date was set in June of 2003, that in November 2003, the court attempted to set an August 2004 trial date for Litmon, that Litmon's case was placed on the master trial calendar in February 2004, and that both petitioners objected to further continuances of their cases and to consolidation. Moreover, the People do not argue that petitioners have waived their objections. On different facts, and in a proper case, the question whether a consolidated trial on two petitions for recommitment should have been held could be resolved by application of waiver or estoppel principles. However, this is not such a case. Therefore, we do not resolve the question presented on the basis of waiver.

Having determined that there are no procedural bars to reaching a decision on the merits, we now turn to the considerations of legislative intent and principles of law that guide our analysis.

## II. The SVPA

### A. *Statutory Scheme*

The SVPA has been summarized in several of our prior opinions, including *People v. Superior Court (Howard)*, *supra*, 70 Cal.App.4th 136, 148–151, *Butler v. Superior Court* (2000) 78 Cal.App.4th 1171, 1174–1177 [93 Cal.Rptr.2d 468] and *People v. Butler* (1998) 68 Cal.App.4th 421, 424–428 [80 Cal.Rptr.2d 357]; see also *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1143–1149 [81 Cal.Rptr.2d 492, 969 P.2d 584]. We briefly review here some of those "procedural safeguards that the SVPA provides in order to decrease the risk of an erroneous liberty deprivation." (*People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1230 [106 Cal.Rptr.2d 490].)

An original petition for commitment as an SVP may be filed *only* if two psychologists or psychiatrists concur that the person meets the criteria for

commitment. (§ 6601, subd. (d).) Then the person has a right to a probable cause hearing. (§ 6602, subd. (a).) If the court finds probable cause to believe the person is an SVP, the judge *shall order* a trial, either by court or jury at the SVP's request, at which the People must prove beyond a reasonable doubt that the person is an SVP. (§§ 6602, 6603, subd. (a).)

■ The original commitment lasts two years. (§ 6604.) Any petition to recommit the person for an additional two-year period must be filed before the expiration of the original commitment. (§§ 6604, 6604.1, subd. (a).) " 'The filing of the petition triggers a new round of proceedings under the Act.' " (*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 904 [119 Cal.Rptr.2d 1, 44 P.3d 949].) Like the original petition for commitment, a petition for recommitment requires the concurrence of two psychologists or psychiatrists that the person continues to meet the criteria for commitment as an SVP. (§ 6604.1, subd. (b); *Butler v. Superior Court, supra,* 78 Cal.App.4th 1171.) Thereafter, the court must hold a probable cause hearing. " 'If no probable cause is found, the petition is dismissed.' . . . [Citation.]" (*People v. Superior Court (Ghilotti), supra,* 27 Cal.4th at p. 904.) If probable cause is found to exist, and the person contests the finding, the court must hold a trial by court or jury, at which the person is entitled to all the rights accorded at the original probable cause hearing and trial. (§§ 6604.1, subd. (b), 6601, subd. (c)–(i), 6603.)

B. *Legislative Intent*

■ The twin goals of the SVPA are to identify and segregate those persons who, by virtue of their mental disorders, pose a significant danger to society, but to do so in a way that enhances the accuracy of the determination that a person is in fact an SVP and minimizes the chance of erroneous confinement. "The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society. [¶] The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, *if adjudicated sexually violent predators*, a continuing threat to society. The continuing danger posed by these individuals and the continuing basis for their judicial commitment is *a*

*currently diagnosed mental disorder* which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders *only as long as the disorders persist* and not for any punitive purposes." (Stats. 1995, ch. 762, § 1, p. 5913; *id.*, ch. 763, § 1, p. 5921, italics added.)

### C. *The Recommitment Trial: Current Mental Condition*

■ The main procedural mechanism through which the Legislature's intent is realized is the provision of a trial every two years to ascertain the committed person's *current* mental condition. The additional provision of pretrial probable cause hearings (§ 6602), and annual show-cause hearings (§ 6605), underscores the importance the Legislature places on accurately assessing the committed person's current mental condition. As we observed in *Butler v. Superior Court*, in the SVPA the Legislature designed a set of procedures whereby every new petition for commitment, filed before the expiration of the previous two-year commitment, is "to be based on the SVP's mental condition at the end of the initial two-year term. The evaluations performed at the initial commitment stage would not reflect the defendant's current mental condition. 'The nature of the [SVPA] envisions a special civil commitment proceeding that is begun and then continues, changes or ends depending upon the *current* mental condition and dangerousness of the proposed or committed SVP . . . . Although the same requirements or issues are involved in alleging any "cause" filed via petition under the Act, the actual facts or circumstances comprising that "cause" in a subsequent petition will necessarily be different due to the addition of new facts bearing on those issues based on the sheer passage of time which may support the release or commitment of the proposed SVP.' [Citation.]" (*Butler v. Superior Court, supra*, 78 Cal.App.4th at p. 1180.) Our conclusion in *Butler* is reinforced by the California Supreme Court's decision in *Albertson v. Superior Court* (2001) 25 Cal.4th 796 [107 Cal.Rptr.2d 381, 23 P.3d 611], holding that an evaluation of an SVP that was more than one year old is stale, and the People are entitled to obtain a current evaluation, interview and access to an SVP's current treatment information in order to discharge their "statutory and constitutional burden in SVPA litigation." (*Id.* at p. 803.)

From the foregoing language and analysis in *Butler*, petitioners and the People draw opposite conclusions. Petitioners assume that a trial on the first petition will focus on their past mental conditions—that is, their mental conditions at the end of the first commitment period now more than two years ago—while a trial on the second petition will focus on their current mental conditions. They argue that trying two recommitment petitions "covering two different time spans" in a single trial will create an evidentiary "quagmire" and prejudice their substantial right to a fair trial. The People, on the other

hand, argue that since the issue at trial on both petitions is whether petitioners *currently*—that is, at the time of trial—meet the criteria for commitment under the SVPA, the prejudice to petitioners is "minimal."

■ We agree that both the statutory language and the case law interpreting it require that the trial on any petition for commitment or recommitment must focus on the person's current mental condition. "[T]he statute clearly requires the trier of fact to find that an SVP is dangerous *at the time of commitment.* The statutory criteria are expressed in the present tense, indicating that each must exist *at the time the verdict is rendered.* In addition, a person cannot be adjudged an SVP unless he 'currently' suffers from a diagnosed mental disorder which prevents him from controlling sexually violent behavior, and which 'makes' him dangerous and 'likely' to reoffend. (§ 6600, subd. (a).) [¶] By defining the qualifying mental disorder in this fashion, the statute makes clear that it is the *present* inability to control sexually violent behavior which gives rise to the likelihood that more crimes will occur, and which makes the SVP dangerous if not confined." (*Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1162, italics added.)

### III. The Problem: Delay

The requirement of a trial every two years presents the trial court with a dilemma when, for whatever reason, so much time passes between the filing of a petition to recommit and the actual trial that a second petition to recommit must be filed before the first petition is tried. Delays approaching or even exceeding the two-year mark inevitably result in the de facto commitment of persons as SVP's for the entire period, albeit without benefit of a verdict reflecting that the person's current mental condition warrants his or her commitment. No one disputes that this is an undesirable result.

■ Review of the extant case law suggests, however, that delays of up to two years, and sometimes beyond, can and do occur. Delays of such length are only possible, in the first instance, because the SVPA has few time limits.[5] The SVPA sets no time period within which the probable cause hearing preceding a recommitment must be held. And, once probable cause is found, the SVPA sets no time period within which the trial must be held; it stipulates only that "the person remain in custody in a secure facility until a

---

[5] The only time periods specifically mentioned in the Act are (1) that the Department of Corrections must refer an inmate to the Department of Mental Health for evaluation at least six months before his release date (§ 6601, subd. (a)); (2) if the inmate's parole date will be reached before the evaluation is complete, a parole hold of 45 days is permitted (§ 6601.3); (3) if the parole hold is set to expire before a probable cause hearing is conducted, the inmate can be held for an additional 10 days; (4) the probable cause hearing must be held during that 10-day period (§ 6601.5); and (5) the commitment shall last two years. (§ 6604.)

trial is completed" (§ 6602), and that "the person *shall not be kept in actual custody longer than two years* unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment . . . ." (§ 6604, italics added.) Given the absence of statutory time limits, the Courts of Appeal have implied that the only act that could divest the court of subject matter jurisdiction and trigger a dismissal is the People's failure to file a petition for recommitment before the prior commitment expires. Thus, it has been held that the pendency of an appeal from the prior commitment order does not divest the trial court of jurisdiction over a subsequent recommitment petition (*People v. Hedge* (1999) 72 Cal.App.4th 1466, 1475–1477 [86 Cal.Rptr.2d 52]); that the unlawfulness of the SVP's underlying custody does not divest the court of jurisdiction to proceed on a recommitment petition (*id.* at p. 1478); that failure to *complete the trial* on a subsequent petition before the expiration of the *prior* commitment period does not divest the trial court of jurisdiction to proceed on the subsequent petition for commitment (*People v. Superior Court (Ramirez)* (1999) 70 Cal.App.4th 1384, 1390 [83 Cal.Rptr.2d 402]); that the failure to *obtain a recommitment order* on the second/subsequent petition before the expiration of the *underlying second commitment term* does not divest the court of jurisdiction (*Orozco v. Superior Court* (2004) 117 Cal.App.4th 170, 178–179 [11 Cal.Rptr.3d 573]); and that delaying trial on a recommitment petition beyond the two years of the underlying commitment term does not violate the SVP's due process rights where the SVP or the SVP's attorney is responsible for the delays (*id.* at pp. 179–180). These holdings have effectively removed the threat of dismissal which, in both criminal and general civil cases, impels cases to trial or other resolution within specified time periods set either by statute or court rule. (See, e.g., Pen. Code, § 1382 [60-day rule]; Code Civ. Proc., § 583.310 [five-year rule]; Gov. Code, § 68600 et seq. [Trial Court Delay Reduction Act (TCDRA)] and Cal. Rules of Court, rule 205 et seq. [implementing TCDRA] and rule 373(e) [implementing Code Civ. Proc., § 583.310].) In addition, it appears that SVP cases lack not only the overall statutory preference for trial setting conferred on all criminal cases over civil cases (Pen. Code, § 1050), but also the preferential status of many other types of civil cases deemed especially worthy of speedy disposition (e.g., Code Civ. Proc., §§ 35, 36), or even the "general civil case[s]" assigned to a delay-reduction program. (Cal. Rules of Court, rules 207, 200.1 (2).) The unfortunate result is that some SVP trials languish at the end of the long queue of civil cases awaiting trial in our already overworked trial courts.

Nevertheless, there must be some limit to the length of time trial on an SVP petition can be delayed. We agree with the *Orozco* court that "[s]urely the Legislature did not contemplate the lengthy delay which occurred here. The trial court should . . . ensure the matter proceeds to trial within a reasonable time following the probable cause hearing." (*Orozco v. Superior*

*Court, supra*, 117 Cal.App.4th at p. 179.) We recognize that the absence of specific time limits in the SVPA bespeaks a legislative intent to provide courts with much-needed flexibility in holding SVP trials. However, we also believe our trial courts need some guidance in how to manage their SVP case loads in a way that ensures a trial on a recommitment petition earlier rather than later in the two year recommitment period. Along with the *Orozco* court, we also believe that ultimately, "[t]o prevent these peculiar circumstances from recurring, . . . aspects of the statutory scheme need clarification to impose timetables for conducting the probable cause hearing on a recommitment petition and for the subsequent recommitment trial." (*Id.* at p. 181 (conc. opn. of Klein, P. J.).)

■ In the absence of such guidance we urge trial courts to utilize the delay-minimizing guidelines and tools that already exist. We note that Code of Civil Procedure section 36, subdivision (e) permits the court to "grant a motion for preference . . . which satisfies the court that the interests of justice will be served by granting this preference." And the trial court's "inherent power to control the proceedings" before it includes "setting the order in which cases are to be tried." (*People v. Superior Court (Alexander)* (1995) 31 Cal.App.4th 1119, 1133 [37 Cal.Rptr.2d 729].) We also note that many of the civil cases excepted from the TCDRA are "special proceedings" which must be tried in a *shorter* time frame than the two-year time frame recommended for most cases that come under the SVPA. We also recognize that there are many types of special proceedings as well as civil actions that have been granted statutory preferences, or contain their own time limits.[6] We have no wish to "micromanage the trial calendar for the respondent court, even assuming we had the power to do so." (*Miller v. Superior Court, supra*, 221 Cal.App.3d at p. 1211.) Nevertheless, we believe every effort consistent with existing statutory law must be made to bring SVP petitions to trial expeditiously and certainly well before the expiration of the very two-year commitment period at issue in the trial.

## IV. The Solution: Consolidation?

The problem is delay. The question here is whether the solution should be a trial on consolidated petitions. If the only issue to be tried is whether an

---

[6] Compare California Rule of Court 207 (b) (exempting certain types of civil proceedings from the TCDRA) with the categories of special proceedings listed in 3 Witkin, California Procedure (4th ed. 1997) Actions, section 14, pages 68–69 and (2004 Supp.) pages 5–6. See also the list of statutes granting preferential trial setting cited in *Miller v. Superior Court* (1990) 221 Cal.App.3d 1200, 1207 [270 Cal.Rptr. 766], footnote 2. See also Penal Code section 2972, subdivision (a) (mentally disordered offender scheme calls for recommitment trial to commence 30 days before expiration of prior commitment, unless time is waived or good cause is shown) and Penal Code section 1026.5, subdivison (b)(4) (not guilty by reason of insanity extension proceedings: same).

SVP's *current* mental condition justifies his or her continued confinement for another two years, why not conserve scarce judicial resources and expedite matters already long delayed by holding one trial on that question instead of two?

We first address whether the court has the power to consolidate SVPA petitions before considering the exercise of that power.

### A. The Court's Power to Consolidate

Petitioners argue, and the People concede, that neither Penal Code section 954[7] nor Code of Civil Procedure section 1048[8] confers on the trial court the power to consolidate two (or more) SVP petitions for trial. Our review of the relevant case law persuades us that petitioners' position is the correct one, and we therefore accept the People's concession on this point.

■ It is well understood that civil commitment proceedings under the SVPA are civil in nature. (*Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1171.) This means that Penal Code section 954, which allows for consolidation in criminal cases, and applies only to the trial of offenses, does not authorize consolidation of SVPA petitions for trial. A civil commitment proceeding under the SVPA is a "special proceeding." (*People v. Superior Court (Cheek)* (2001) 94 Cal.App.4th 980, 988 [114 Cal.Rptr.2d 760]; *Bagration v. Superior Court* (2003) 110 Cal.App.4th 1677, 1684–1685 [3 Cal.Rptr.3d 292]; *People v. Calhoun* (2004) 118 Cal.App.4th 519, 525 [13 Cal.Rptr.3d 166]; *Leake v. Superior Court* (2001) 87 Cal.App.4th 675, 679–680 [104 Cal.Rptr.2d 767]; 3 Witkin, Cal. Procedure, *supra,* Actions, § 14, p. 67.) "Part 2 of the Code of Civil Procedure does *not* generally extend to a special proceeding unless the statutes establishing the special proceeding expressly incorporate Code of Civil Procedure Part 2 provisions. (*Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 707 [238 Cal.Rptr. 780, 739 P.2d 140].)" (*Bagration v. Superior Court, supra,* 110 Cal.App.4th at pp. 1685–1686.) Section 1048 is in Part 2 of the Code of Civil Procedure. The SVPA does not expressly incorporate Part 2 of the Code of Civil Procedure, or section 1048, or otherwise mention

---

[7] Penal Code section 954 provides in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated."

[8] Code of Civil Procedure 1048, subdivision (a) provides in relevant part: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

consolidation. Therefore, section 1048 of the Code of Civil Procedure does not authorize the consolidation of SVPA petitions for trial.

■ The People contend that the court either has the inherent power to consolidate SVPA petitions for trial, or that the power is conferred upon it by Code of Civil Procedure section 187.[9] We agree with the People that the trial court has the inherent power to consolidate matters that come before it for trial in special proceedings. "Courts have inherent power, as well as power under section 187 of the Code of Civil Procedure, to adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute . . . . It is not only proper but at times may be necessary for a court to follow provisions of the Code of Civil Procedure which are harmonious with the objects and purposes of the proceeding although those provisions are not specifically made applicable by the statute which creates the proceeding." (*Tide Water Assoc. Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 825 [279 P.2d 35], fn. omitted.) "[A]ll courts have inherent supervisory or administrative powers which enable them to carry out their duties, and which exist apart from any statutory authority. [Citations.]" (*Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 19 [267 Cal.Rptr. 896]; disapproved on other grounds in *Kowis v. Howard* (1992) 3 Cal.4th 888, 896–897 [12 Cal.Rptr.2d 728, 838 P.2d 250]; accord, *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 [67 Cal.Rptr.2d 16, 941 P.2d 1203].) These powers are derived from the state Constitution. (*People v. Castello* (1998) 65 Cal.App.4th 1242, 1247 [77 Cal.Rptr.2d 314]; Cal. Const., arts. III, § 3, and VI, § 1.)

■ In the context of the SVPA, our Supreme Court drew on the courts' "inherent judicial power to determine whether an evaluator's recommendation . . . constitutes legal error" to fashion a procedure not otherwise provided for in the Act. (*People v. Superior Court (Ghilotti), supra,* 27 Cal.4th 888, 912.) In the context of complex civil litigation, the courts' "inherent managerial powers" have been invoked to ensure courts " 'assume an aggressive role at the earliest possible time to efficiently move the case to settlement or trial.' [Citation.]" (*Asbestos Claims Facility v. Berry & Berry, supra,* 219 Cal.App.3d at p. 19.) An early example of the exercise of the power to effect consolidation in special proceedings is found in *City of L. A. v. City of Huntington Pk.* (1939) 32 Cal.App.2d 253, 269–270 [89 P.2d 702], holding that the trial court "had the power, in its discretion, to order the consolidation" of two actions for trial even though they were special proceedings, and

---

[9] Code of Civil Procedure section 187 provides: "When jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

the act contained no provisions concerning the procedures to be followed in the trial court. (See also *City of Oakland v. Darbee* (1951) 102 Cal.App.2d 493, 502 [227 P.2d 909].) We have no doubt that the courts' "inherent power to create new procedures if necessary in pending cases" encompasses the power to consolidate recommitment petitions under the SVPA in the proper case. (*Asbestos Claims Facility v. Berry & Berry, supra*, 219 Cal.App.3d at p. 23.)

### B. *Limits on the Court's Inherent Power*

Even though the court has the inherent power to consolidate special proceedings including SVPA petitions, the question remains whether the exercise of that power is consistent with the goals and procedures of the SVPA; for "regardless of their source of authority, 'trial judges have no authority to issue courtroom local rules which conflict with any statute' or are 'inconsistent with law.' [Citations.]" (*Rutherford v. Owens-Illinois, Inc., supra*, 16 Cal.4th at pp. 967–968.) Moreover, "our mission is to discern legislative intent." (*Bagration v. Superior Court, supra*, 110 Cal.App.4th at p. 1689.) We are also guided by prior cases in which courts have been called upon to decide whether other rules of civil procedure operate in cases arising under the SVPA. (See, e.g., *People v. Calhoun, supra*, 118 Cal.App.4th 519 [Code Civ. Proc., § 231 (six peremptory challenges) applies to SVPA cases]; *Bagration v. Superior Court, supra*, 110 Cal.App.4th 1677 [Code Civ. Proc., § 437c, subd. (a) (summary judgment procedure) inapplicable to SVPA proceedings]; *Leake v. Superior Court, supra*, 87 Cal.App.4th 675 [Code Civ. Proc., § 2016 et seq. (Civil Discovery Act of 1986) applies to SVPA cases]; *People v. Superior Court (Cheek), supra*, 94 Cal.App.4th 980 [same].)

 In our view, the answer must lie in legislative intent as evidenced by the entire SVPA statutory scheme. On the one hand, nothing in the SVPA contemplates overlapping, successive recommitment petitions, or specifically authorizes consolidation of successive and overlapping recommitment petitions for consecutive two-year periods without a probable cause hearing or trial in between. On the contrary, viewed as a whole, the SVPA clearly contemplates that a probable cause hearing and a trial on each and every petition to extend an SVP's commitment will occur every two years. It explicitly provides that courts "*shall order* that a trial be conducted" on the merits of every petition to recommit a person as an SVP (§ 6602, italics added) and further provides that the person "*shall not be kept in actual custody longer than two years* unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment . . . ." (§ 6604, italics added.)

Although we are convinced that trial courts have the inherent power to consolidate recommitment petitions, we are also convinced that, unless an

SVP consents to it, resort to consolidation should rarely be necessary. If a recommitment petition is tried at or near the commencement of the commitment period to which it relates, there will be no overlapping petition and thus no need for consolidation. If, for some compelling reason, the first recommitment petition cannot be tried before a second recommitment petition is also ready to be tried by both sides, it may well be that consolidation does not violate this legislative intent. However, when the trial on the earlier petition can be held within the two-year commitment period to which it relates, and the SVP has announced ready for trial and has objected to consolidation or a continuance, consolidation appears to be at odds with the legislative intent codified in the SVPA. The SVPA is designed to ensure that the continued confinement of an SVP is justified, if at all, at least every two years. The legislative scheme's emphasis on frequent justification for the confinement of each SVP demands that an SVP not be confined without an adjudication of the justification for that confinement, solely because judicial resources will thereby be conserved.

Furthermore, under such circumstances, a continuance of the trial on a prior petition in order to join it with a later petition would not only be inconsistent with the procedures mandated by the SVPA, but also would fail to solve the problem of delay. In our view, permitting a policy of liberal consolidation of recommitment petitions may tend to encourage delay, not reduce it.

We therefore hold that because the SVPA evidences a legislative intent to provide a trial on every filed recommitment petition as close in time to the expiration of the prior commitment as practicable, it is error to order consolidation over objection when a consolidated trial can occur *only* if the earlier petition is further delayed.

### C. *Consolidation of SVPA Petitions Here*

Our concerns are well illustrated by the facts of the two cases before us. Here, Johnson's trial on the earlier recommitment petition was scheduled in June 2003 for trial in April 2004, but the trial court continued the trial, over Johnson's objection, to the very last day of the underlying commitment period, *solely to accommodate the consolidation of the earlier and later petitions.*

A similar scenario occurred in Litmon's case. In November 2003 Litmon objected to a trial date in August 2004, and as a result, his case was placed on the master trial calendar in February 2004, where it remained in a trailing posture, until the court granted the consolidation motion. Nevertheless, it appears that the trial on the first petition could have been held before the

expiration of the underlying commitment period, and that it was the trial court's granting of the People's consolidation motion, over Litmon's objection, that resulted in a delay of his pending trial on the earlier petition beyond the two-year commitment period.

■ We believe that SVP trials should not be delayed, over objection, solely to accommodate consolidation. In our view, a motion to consolidate successive petitions should not be granted unless the SVP consents to consolidation or the consolidation will not delay the trial of the earlier petition. However, if consolidation will not delay the trial of the earlier petition, and consolidation will not prejudice the SVP's right to a fair trial, then consolidation is permissible.

■ Here, Johnson and Litmon objected to consolidation, and consolidation necessarily required delay of the trials on the earlier petitions. It follows that the motions to consolidate were erroneously granted in these cases. Therefore, we need not decide whether holding a single trial on consolidated petitions would be prejudicial to these petitioners. In a case where consolidation would not occasion any delay of the earlier petition, and therefore would not violate the intent of the SVPA, the question of prejudice is more properly addressed in the first instance to the sound discretion of the trial court. (Cf. *People v. Grant* (2003) 113 Cal.App.4th 579, 586 [6 Cal.Rptr.3d 560]; Code Civ. Proc., § 1048, subd. (b).)

This brings us to the question of remedy. Litmon and Johnson were entitled to undelayed trials of the earlier recommitment petitions months ago. We cannot undo the delay that has already occurred. On remand, the sole remedy that we can afford these petitioners is to direct the trial court to immediately schedule trials on the earlier petitions and to deny any motions to consolidate the earlier and later petitions unless the SVP's agree to consolidation.

## CONCLUSION

■ The trial court has the inherent power to consolidate recommitment petitions under the SVPA. However, where that power is exercised in a way that causes the trial on the first petition for recommitment to be delayed, over the SVP's objection, its exercise is contrary to the intent of the SVPA and constitutes error. While we understand that our holding today places an additional responsibility on our already overburdened trial courts to try SVP cases more expeditiously, we believe this result is consistent with the goals of the SVPA.

## DISPOSITION

In *Johnson v. Superior Court (People)*, H027353: Let a peremptory writ of mandate issue (1) commanding the superior court to vacate its April 2, 2004 order consolidating for trial the recommitment petitions filed in May 2002 and February 2004; and (2) directing the superior court to set the May 2002 recommitment petitions for trial forthwith, and to complete, as expeditiously as possible, the probable cause hearing on the February 2004 recommitment petition. The temporary stay order is vacated.

In *Litmon v. Superior Court (People)*, H027346: Let a peremptory writ of mandate issue (1) commanding the superior court to vacate its April 2, 2004 order consolidating for trial the recommitment petitions filed in May 2002 and February 2004; and (2) directing the superior court to set the May 2002 recommitment petition for trial forthwith, and to commence, as expeditiously as possible, the probable cause hearing on the February 2004 recommitment petition. The temporary stay order is vacated.

Bamattre-Manoukian, Acting P. J., and Mihara, J., concurred.

The petition of all petitioners for review by the Supreme Court was denied January 26, 2005. George, C. J., did not participate therein.