Filed 4/11/16  P. v. Izaguirre CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062098 |
| v. | (Super.Ct.No. RIC1312172) |
| ALFREDO AGUILAR IZAGUIRRE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Elisabeth Sichel, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Gutierrez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant, Alfredo Aguilar Izaguirre, was found to be a sexually violent predator (SVP) by a jury, and was committed to the Department of State Hospitals (DSH) for an indeterminate term, as he neared the conclusion of his prison sentence. He appeals the commitment under the Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code, § 6600, et seq.) on the grounds that (a) the SVPA provides only for civil commitment of the most seriously ill and dangerous sexual offenders, not "minor offenders" such as defendant; (b) there is insufficient evidence to support the jury verdict finding that defendant met the statutory criteria for civil commitment pursuant to the SVPA; (c) the trial court's evidentiary rulings permitting experts to testify based on hearsay, coupled with inadequate instructions, rendered the trial unfair; and (d) the commitment of defendant pursuant to the SVPA violated his constitutional right to equal protection under the law. We affirm.

## BACKGROUND

At defendant's SVP trial, the court considered evidence of defendant's prior history, leading up to and including the index crime of lewd acts on a child under 14. In 1994, defendant was convicted of misdemeanor indecent exposure (Pen. Code, § 314, subd. (1))[1] for feigning masturbation in the presence of an Hispanic woman in the hallway of a K-Mart. In his testimony at the SVP trial, defendant admitted exposing himself. Four months later, defendant was again charged with and convicted of indecent

---

[1] Hereafter, we will refer to the convicted charges as "314.1" and "314.2" to avoid confusion, where those references appear in the record. (See *In re King* (1984) 157 Cal.App.3d 554, 556, fn.1.)

2

exposure as a misdemeanor (Pen. Code, § 314, subd. (2)). Defendant did not recall the second arrest at the time of the interviews conducted for his evaluations, but at trial he admitted he motioned to a woman in K-Mart as if pulling down his zipper, but did not do it.

In August 2003, defendant entered a women's restroom in a Barnes and Noble store and attempted to peek at a woman using the toilet. He was charged and convicted of disorderly conduct within the meaning of Penal Code section 647, subdivision (k)(1).[2] In July 2004, defendant was again charged and convicted of disorderly conduct (Pen. Code, § 647, subd. (a)). On this occasion, he bumped up behind a woman at a shopping mall, and when she turned around, he was masturbating with his hand in his pocket, but did not recall the incident. The woman who was rubbed by defendant identified defendant's photograph from a photo lineup that included defendant's photograph due to other reports of similar incidents at the same shopping mall.

In April 2005, defendant was charged and convicted of sexual battery (Pen. Code, § 243.4, subd. (e)(1)). At the time of the offense, a woman with a young child were shopping at Linens-N-Things, when the woman felt someone rubbing her buttocks. She turned around to confront defendant and he ran out of the store, where he was apprehended by citizens in the parking lot. Defendant denied touching her, explaining that the aisles were narrow. Between the date of the sexual battery offense and the date

---

[2] The reporter's transcript reflects a violation of section "247(k)(1)," but this is apparently an error of transcription.

3

of the index crime, defendant was charged with trespass based on a complaint of inappropriate touching by a 12-year-old girl at the Westfield Mall. Although defendant did not recall being banned from the Westfield Mall or being charged with trespass, he admitted on the stand in his SVP trial that he "tried" to touch the girl "a little bit."

In 2008, defendant was charged and convicted of committing lewd and lascivious acts on a child under the age of 14, the index crime for the SVP proceeding (Pen. Code, § 288, subd. (a)). On this occasion, a seven-year old girl was in a store in Coachella with her parents, but wandered off. Defendant indicated that he noticed her shoe had fallen off, was unfastened, or broken, and he bent down to fix it, rubbing his hand on her vaginal area over her clothing. In the current proceeding, defendant testified the touching was accidental, but he pled guilty anyway. For this offense, defendant received a sentence of six years in state prison.

Before being released on parole, the People filed a petition seeking an indeterminate commitment of defendant, pursuant to Welfare and Institutions Code, section 6600, et seq. Two evaluations were prepared independently by experts to determine if defendant met the criteria for an SVP commitment. Dr. William Damon, Ph.D., a psychologist, prepared a report in which he offered the opinion that defendant met the SVP criteria. Dr. Damon reviewed police and other reports before interviewing defendant. The incident report pertaining to the index crime noted that defendant had admitted having impulses to touch people and that he needed help when he was

4

interviewed by police following his arrest for the index crime of lewd and lascivious acts upon a child under the age of 14.

Dr. Damon's initial evaluation was conducted prior to the adoption of the Diagnostical and Statistical Manual (DSM) 5, and for that reason, included a diagnosis under the DSM-IV TR that defendant suffered from an Axis I diagnosis of Paraphilia NOS (not otherwise specified). Dr. Damon's diagnosis reflected the fact that defendant's paraphilic symptom presentation was mixed in nature, and his deviant behavior had escalated from non-contact to contact offenses. It also reflected that defendant admitted having a psychological problem in which he had impulses that motivated him to sexually offend on women and girls, and resulted in repeated contact with law enforcement. His age was not a factor. Additionally, defendant had never sought sex-offender treatment.

The report concluded with Dr. Damon's opinion that defendant's likelihood for reoffending rose to the level of a serious, well-founded risk. Using the Static-99 R, Dr. Damon concluded defendant's score of five placed in him the moderate-to-high risk group for being charged or convicted of another offense.

Defendant was also evaluated by Dr. Carol Abkarian, Psy.D., a clinical psychologist. Dr. Abkarian also diagnosed defendant as suffering from Paraphilia NOS, because he did not meet the criteria for any other identifiable category. Dr. Abkarian observed that defendant displayed a clear repeated pattern of offending despite negative consequences, showing he continues to act on urges and display impaired decision-

5

making.  He also displayed patterns of possible escalating behaviors and frequency, along with lack of emotional control as evidenced by the fact he blamed the victims.

In Dr. Abkarian's opinion, contained in her evaluation report, defendant was likely to engage in sexually violent predatory behavior without appropriate treatment.  Using the Static-99 R risk assessment, Dr. Abkarian gave defendant a score of six, putting him in the high risk category for re-offending.

The defense retained psychologist Dr. Michael Kania to evaluate defendant.  Dr. Kania prepared an evaluation report indicating that, in his opinion, although defendant met the SVP criterion relating to the index offense, the other criteria were not established because he could not be diagnosed as suffering a mental disorder.  Dr. Kania indicated that his opinion was based on the fact that defendant's two indecent exposure convictions could not be counted towards his history of sexual offenses because, although defendant admitted masturbating in public, there was no indication that defendant actually exposed his genitals to an unsuspecting person.

A jury trial was conducted.  At trial, Drs. Damon and Abkarian testified, updating their opinions based on the newer version of the DSM.  Under the DSM-5, defendant was diagnosed as suffering from "other specified paraphilic disorder with exhibitionistic and voyeuristic features."  Both experts continued to be of the opinion that defendant meets the criteria for commitment as an SVP:  His index crime qualified as a violent sexual offense, he has a diagnosable mental disorder that predisposes him to commit criminal sexual acts, and it is likely he would offend in a sexually predatory nature in the future.

6

Defendant testified out of order, before Dr. Abkarian took the stand. As a result, Dr. Abkarian's opinion was substantiated by defendant's testimony admitting he had exposed his genitals during the indecent exposure incidents. Dr. Kania testified on behalf of defendant, relating his opinion that defendant did not suffer from a diagnosable mental disorder. As a consequence, Dr. Kania was of the opinion that defendant did not meet the criteria for commitment as an SVP.

The jury returned a verdict that defendant met the criteria for commitment as a sexually violent predator. The court committed defendant to the Department of State Hospitals for an indeterminate term. Defendant appealed.

## DISCUSSION

1. *The SVPA Applies To Any Person Who Meets the Statutory Criteria.*

Defendant argues that the SVPA must be interpreted to provide for commitment only of "the most seriously ill and dangerous sexual offenders, not minor offenders such as appellant." Because defendant's premise (that he is a minor offender) is incorrect, we disagree.

The rules of statutory construction require us to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. (*Estate of Griswold* (2001) 25 Cal.4th 904, 910.) We begin by examining the statutory language, giving the words their usual and ordinary meaning. (*Id.,* at p. 911.) Additionally, we must consider the statutory language in the context of the entire statute and the statutory scheme of which it is a part. (*People v. Whaley* (2008) 160 Cal.App.4th 779, 793, citing *Phelps v. Stostad*

7

(1997) 16 Cal.4th 23, 32.)  These same rules of construction govern the interpretation of an initiative measure.  (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900-901.)

The twin goals of the SVPA are to identify and segregate those persons who, by virtue of their mental disorders, pose a significant danger to society, but to do so in a way that enhances the accuracy of the determination that a person is in fact an SVP and minimizes the chance of erroneous confinement.  (*Litmon v. Superior Court* (2004) 123 Cal.App.4th 1156, 1168.)  The SVPA was amended in 2006 by Senate Bill No. 1128 (2005-2006 Reg. Sess.) and subsequently by Proposition 83 that same year.  As a result of Senate Bill No. 1128, section 6604 of the Welfare and Institutions Code provided for an indeterminate term of commitment.

The statute requires the trier of fact to find that an SVP is dangerous *at the time of commitment.* (*Litmon v. Superior Court, supra,* 123 Cal.App.4th at p. 1170 [italics in original]; see also, *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1162.)  However, the statutory definition of "dangerous" does not mean the SVP process is limited to persons who are physically violent with victims.  Those who have been adjudicated to have committed criminal acts represent a class that is on the whole more dangerous than those who have not—in other words, that such adjudication is a reasonable proxy for greater dangerousness.  (*People v. McKee* (2010) 47 Cal.4th 1172, 1200 (*McKee I*).)  The dangerous finding requires only an assessment of future dangerousness.  (*Id.,* at p. 1203.)  "Danger to the health and safety of others" means "merely 'the state of being exposed to harm' [citation] or 'the condition of being exposed to the *chance* of evil; *risk*; peril'

8

[citation], and that one is 'predisposed' to do something simply connotes that he or she is 'inclined' or 'susceptible' to doing it. [Citation.]" (*People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 920 [italics in original] (*Ghilotti*).)

Thus, the phrase "*likely* to engage in acts of sexual violence" [italics added], as used in Welfare & Institutions Code, section 6601, subdivision (d), connotes that an evaluator must conclude that the person is "'likely' to reoffend if, because of a current mental disorder which makes it difficult or impossible to restrain violent sexual behavior, the person presents a *substantial danger,* that is, a *serious and well-founded risk*, that he or she will commit such crimes if free in the community." (*Ghilotti, supra,* 27 Cal.4th at p. 922.)

The term "predatory," as defined by Welfare and Institutions Code section 6600, subdivision (e), refers to acts "directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exists, or an individual with whom a relationship has been established or promoted for the primary purpose of victimization."

To qualify as an SVP, a person must have "been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Welf. & Inst. Code, § 6600, subd. (a)(1).) A "sexually violent offense," in addition to certain unlawful sex acts committed by force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another person (Welf. & Inst. Code, § 6600, subd. (b)), is also a sexual offense

9

committed against a child under the age of 14.  (Welf. & Inst. Code, § 6600.1.)  In other words, where the victim is a child under the age of 14, a showing of force or duress is not required.  (*People v. Fraser* (2006) 138 Cal.App.4th 1430, 1443, citing *People v. Otto* (2001) 26 Cal.4th 200, 205.)

From the above authorities, we conclude that the statement that the SVPA narrowly targeted "a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders [who] can be identified while they are incarcerated," (*McKee I, supra,* 47 Cal.4th at p. 1206, citing *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253) is not limited to offenders who have committed sex offenses involving force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another, or threatening retaliation.

Instead, we discern that the statute was intended to target a group of sexually violent predators—including offenders who have committed and are deemed likely to commit in the future other violations of Penal Code section 288, subdivision (a)—who have diagnosable mental disorders, who present a danger to the health and safety of others in that they are likely to commit a predatory sexually violent offense (including violations of Penal Code section 288, subdivision (a)) if not treated.  These offenders represent the "small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders" targeted by the Act.  Nothing in the statutory language limits application of the SVPA to only "the most seriously ill and dangerous sexual offenders," as defendant urges us to hold.

10

Defendant's conduct is of the sort targeted by the statute. He was convicted of a sexually violent offense (Pen. Code, § 288, subd. (a)), which was predatory in nature because it was committed against a stranger. Whatever else may be said about the "nuisance" nature of defendant's history, despite having intimate relationships with a sexual partner, he was compelled to commit acts of indecent exposure, frotteurism, and voyeurism over a period of years, escalating with the sexually violent crime of lewd and lascivious acts against a seven-year-old child. Two experts concluded he had a diagnosable mental disorder that predisposed him to commit other sexual predatory offenses. Defendant is not a minor offender.

2. *There Is Substantial Evidence to Support the Verdict that Defendant Is an SVP.*

Defendant argues there is insufficient evidence to support the jury's finding that he is a sexually violent predator. We disagree.

To be committed under the SVPA, there must be expert psychological evidence, using standardized assessment protocols, that the defendant "is likely to engage in acts of sexual violence without appropriate treatment and custody." (Welf. & Inst. Code, § 6601, subds. (c) & (d).) "While there is no need for proof of a recent overt act while the offender is in custody [citation], it is clear that the SVPA permits civil commitment only upon a finding that the person has *current* psychological symptoms that render him or her likely to reoffend." (*People v. Hubbart* (2001) 88 Cal.App.4th 1202, 1219 [italics in original].)

11

To establish that a defendant was a sexually violent predator, the People are required to prove that (1) the defendant has been convicted of a sexually violent offense against one or more victims; (2) he has a diagnosed mental disorder; and (3) the mental disorder makes it likely that, if released, he will engage in sexually violent criminal behavior. (Welf. & Inst. Code, § 6600, subd. (a)(1); *People v. Poulsom* (2013) 213 Cal.App.4th 501, 516.)

When a defendant challenges the sufficiency of the evidence in proceedings under the SVPA, we must review the entire record in the light most favorable to the judgment to determine whether substantial evidence supports the determination below. (*People v. Mercer* (1999) 70 Cal.App.4th 463, 466, citing *People v. Johnson* (1980) 26 Cal.3d 557, 576-578.) "To be substantial, the evidence must be '"of ponderable legal significance . . . , reasonable in nature, credible and of solid value.'" [Citation.]" (*People v. Mercer, supra*, 70 Cal.App.4th at p. 466.)

In reviewing the record to determine the sufficiency of the evidence, this court may not redetermine the credibility of witnesses, nor reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment. (*People v. Poe* (1999) 74 Cal.App.4th 826, 830.) In particular, we may not reassess the credibility of experts or reweigh the relative strength of their conclusions. (*Id.,* at p. 831.) We reverse only if no rational trier of fact could have found the essential elements beyond a reasonable doubt. (*People v. Rowland* (1992) 4 Cal.4th 238, 269.)

In this case, the evidence supporting the defendant's commitment consists, for the most part, of his convictions, including the index crime, a sexually violent offense, and the expert opinions of Drs. Damon and Abkarian. Both experts diagnosed defendant with an undifferentiated form of paraphilia, a diagnosed mental disorder, and both predicted a likelihood defendant would commit future sexually violent predatory acts based on his history of escalating offenses that culminated in the sexually violent index offense. Both experts also based their opinions on the fact that defendant persisted in committing new offenses despite his numerous arrests and the negative consequences flowing therefrom.

Defendant does not argue that his conviction for lewd and lascivious acts on a child under 14 does not qualify as the index offense, an element of the recommitment scheme. Instead, he focuses his challenge on the sufficiency of the evidence to support experts' diagnosis that he suffered from a mental disorder that makes it likely he would engage in sexually violent criminal behavior. To make this point, defendant relies heavily on Dr. Kania's evaluation.

While Dr. Kania offered a different opinion, the jury was free to reject it. (*People v. Wright* (1988) 45 Cal.3d 1126, 1142 [unlike a jury instruction, expert testimony is not binding on the jury].) We note that Dr. Kania's reluctance to give defendant a diagnosis for a sexual disorder was based in large part on his acceptance of defendant's denials respecting some of the sexual offenses to which he pled guilty, which led the expert to discount the nature of the prior offenses. Defendant's testimonial admission that he

13

actually did expose himself in 1994 undermined Dr. Kania's opinion to the extent it was grounded on defendant's denials.

Additionally, Dr. Kania testified that defendant's prior acts of exhibitionism and frotteurism did not involve "touching anyone or any violent acts." He agreed with defense counsel's description of defendant's conduct by referring to his body of work as "a nuisance sort of thing." Yet the very definition of frotteurism, as contained in both the DSM-IV TR and the DSM-V, requires touching.[3] Defendant engaged in more than one nonconsensual touching of the frotteuristic type, before graduating to the sexually violent felony that formed the predicate for the commitment petition.

Finally, despite acknowledging that a violation of Penal Code section 288, subdivision (a), qualifies as a violent offense, Dr. Kania didn't see defendant's act as "forcible." Nevertheless, a violation of Penal Code section 288, subdivision (a) is a violent sexual offense.

By history, defendant's offenses have escalated in nature, as noted by the prosecution's experts. He began in the 1990s with exhibitionist offenses, and graduated to frotteuristic offenses against adult women, including women accompanying female children, before committing the index offense of lewd and lascivious acts with a child

---

[3] The DSM-IV-TR defines frotteurism as a paraphilia characterized by sexual fantasies, urges, or behaviors involving touching or rubbing one's genitals against the body of a non-consenting person. (American Psych. Assn.: Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Rev., 2000, § 302.89.) The DSM-V describes frotteuristic disorder as a paraphilic disorder of sexual arousal as a result of touching or rubbing a nonconsenting individual, which often occurs in public settings.

14

under 14, a violent felony.  The fact defendant had observed the Penal Code section 288 victim with her parents, and followed her after she wandered off, spoke volumes about his predatory nature and the escalating nature of his sexual offenses and called into question the sincerity of his intentions, to fix her shoe.

Defendant also argues there is insufficient evidence to support the finding there is a likelihood defendant will commit a future sexually violent offense.[4]  We disagree.

To qualify as an SVP, the third element requires a showing that the person is a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent predatory criminal behavior.  (*In re Calhoun* (2004) 121 Cal.App.4th 1315, 1323, citing *People v. Hurtado* (2002) 28 Cal.4th 1179, 1181-1182 (*Hurtado*).)  "'"Danger to the health and safety of others" does not require proof of a recent overt act while the person is in custody.'  [Citation.]" (*In re Calhoun, supra,* 121 Cal.App.4th at p. 1323.)  "'"Danger" is merely "the state of being exposed to harm."'  [Citation.]" (*People v. Rasmuson* (2006) 145 Cal.App.4th 1487, 1506.)  "Likely" does not mean more likely than not.  (*People v. Shazier* (2014) 60 Cal.4th 109, 126.)  Nor does it refer to persons who are more likely than not to reoffend.  (*Ghilotti, supra,* 27 Cal.4th at p. 924.)  But it "does not require a precise determination that the chance of re-offense is *better than even.*" (*Id.*, at p. 922.)

---

[4] In his brief, defendant emphasizes "violent" in quotation marks.  Committing violations of Penal Code section 288, subdivision (a), as defendant has done, qualifies as a "violent" sexual offense.  The fact defendant did not inflict bodily injury or employ threats in that offense, and that his prior offenses did not qualify as "violent," is irrelevant.

Instead, it is likely that a person will engage in sexually violent predatory criminal behavior if "the person is found to present a *substantial danger*, that is, a *serious and well-founded risk*, of committing such crimes if released from custody." (*People v. Roberge* (2003) 29 Cal.4th 979, 988 (*Roberge*).) Evidence of a person's amenability to voluntary treatment is relevant to the ultimate determination whether the person is likely to engage in sexually violent predatory crimes if released from custody. (*Id.* at p. 988, fn. 2.)

In *Ghilotti,* the California Supreme Court noted that the state has a compelling protective interest in the confinement and treatment of persons who have already been convicted of violent sex offense, and who, as the result of current mental disorders that make it difficult or impossible to control their violent sexual impulses, represent a substantial danger of committing similar new crimes. (*Ghilotti, supra*, 27 Cal.4th at p. 924.) The testimony of the psychologists who have evaluated the defendant constitutes substantial evidence supporting the jury's finding that defendant is a danger to the health and safety of others because it is likely he will reoffend by engaging in sexually violent acts. (*People v. McCloud* (2013) 213 Cal.App.4th 1076, 1090 (*McCloud*).)

Defendant's history of nonconsensual sexual offenses began in 1994, and escalated from non-contact offenses (indecent exposure offenses) to contact offenses against adult women, including adult women with female children present, to the index crime, a sexually violent offense of lewd and lascivious acts on a child under 14. Beginning in 1994, he has been repeatedly prosecuted and punished, and even ordered to

16

stay away from a shopping mall, but was undeterred in the commission of new offenses of more serious nature. Two experts evaluated his likelihood of re-offense using the Static-99 protocol, and determined he was a moderately high risk for reoffending.

Finally, defendant argues that the record as a whole lacks a factual basis for finding defendant's mental disorder causes serious volitional impairment. We need only observe that in over 20 years, defendant has acted on his paraphilic impulses notwithstanding the number of times he has been apprehended, prosecuted, and punished. The inability to restrain from acting on one's sexual impulses despite such a record is strong support for the finding of volitional impairment.

Given defendant's history and his own testimony, many of Dr. Kania's basic assumptions were called into question. Dr. Kania's attempt to mitigate defendant's offense history does not undermine the jury's verdict. There was ample evidence to support the jury's verdict that defendant suffered from a diagnosed mental disorder predisposing defendant to committing future sexually violent acts.

3.      *The Trial Court Properly Allowed the Experts, Including the Defense Expert, to Rely On Hearsay in Forming Their Opinions.*

Defendant argues that his trial was tainted by trial court rulings admitting the evaluations of Drs. Damon and Abkarian, complaining that the evidence involved multiple levels of hearsay concerning defendant's criminal history. We find no violation of defendant's right to due process of law.

17

Civil commitments involve significant deprivation of liberty, although such proceedings are not criminal proceedings. (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1119.) Some constitutional protections available in the criminal context apply to civil commitment proceedings as a matter of due process. (*Id*. at p. 1119*,* citing *People v. Allen* (2008) 44 Cal.4th 843, 870.) Thus, in SVP proceedings, a defendant has a due process right to testify over the objection of counsel (*ibid*), proof beyond a reasonable doubt is required (*People v. Burnick* (1975) 14 Cal.3d 306, 322-323), as is the requirement of a unanimous jury verdict. (*People v. Feagley* (1975) 14 Cal.3d 338, 342.)

We also recognize that due process protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. (*Jackson v. Virginia* (1979) 443 U.S. 307, 315 [61 L.Ed.2d 560, 99 S.Ct. 2781].) This has been interpreted to mean that a reviewing court evaluates the case for substantial evidence, that is, evidence that is reasonable in nature, credible, and of solid value. (*People v. Johnson* (1980) 26 Cal.3d 557, 576.)

The SVPA expressly allows experts to rely upon multiple hearsay documents. (*People v. Otto* (2001) 26 Cal.4th 200, 207, 208.) "The existence of any prior convictions may be shown with documentary evidence. The details under lying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, *and*

18

*evaluations by the State Department of State Hospitals.*"  (Welf. & Inst. Code, § 6600, subd. (a)(3), italics added.)

The Evidence Code also allows experts to testify on matters that form the bases for their opinions.  (Evid. Code, § 802.)  An expert may generally base his opinion on matter known to the expert, including hearsay, so long as the matter is of a type reasonably relied upon by experts in the particular field of expertise.  (*People v. Gardeley* (1996) 14 Cal.4th 605, 618-619.)  Thus, as a general rule, out-of-court statements offered to support an expert's opinion are not hearsay because they are not offered for the truth of the matter asserted; they are offered for the purpose of assessing the value of the expert's opinion.  (*People v. Dean* (2009) 174 Cal.App.4th 186, 193.)

Here, Dr. Damon testified in limine that when evaluating or diagnosing a person under the SVP, he usually relied on police reports, summaries of witness statements to investigating officers, and things of that nature.  The expert explained that the matters on which he relied, including all the police reports, are the sort of matters that other experts in the field normally relied on.  The testimony of the experts based on documentary evidence that is admissible under Welfare & Institutions Code, section 6600, subdivision (a)(3), did not violate defendant's constitutional rights or taint the proceedings.

4.      *There Was No Instructional Error.*

In connection with his argument that the trial court improperly allowed the experts to testify as to their opinions, defendant argues that full and fair instructions were not provided to the jury.  Specifically, he argues that CALCRIM No. 3454 was deficient

because it did not explain that the diagnosed mental disorder must result in a serious impairment of defendant's ability to control his dangerous sexual behavior.  We disagree.

As in a criminal trial, the trial court in an SVP proceeding must instruct on the general principles of law that are necessary to the jury's understanding of the case. (*Roberge, supra*, 29 Cal.4th at p. 988.)  We review instructional errors under the harmless beyond a reasonable doubt standard.  (*Hurtado, supra,* 28 Cal.4th 1179, 1194 [failure to instruct on need to find likelihood of future predatory acts was harmless beyond a reasonable doubt], citing *Chapman v. California* (1967) 386 U.S. 18.)  We review challenges for instructional error notwithstanding the lack of objection (Pen. Code, § 1259).  A court fulfills its duty of instructing the jury by defining the elements in the language of the statute, although it must also instruct on general principles of law that are necessary to the jury's understanding of the case.  (*People v. Calderon* (2004) 124 Cal.App.4th 80, 92.)

In *People v. Williams* (2003) 31 Cal.4th 757 (*Williams*), the defendant argued that the trial court erred in failing to give his special instructions relating to the need for the jury to find he was unable to control his dangerous behavior by virtue of the diagnosed mental disorder.  The California Supreme Court rejected this contention.  It held that California's statute inherently "*embraces and conveys*" the need for a dangerous mental condition characterized by impairment of behavioral control, which purpose is accomplished "by defining a sexually violent predator to include the requirement of a diagnosed mental disorder [citation] affecting the emotional or volitional capacity

20

[citation], which predisposes one to commit criminal sexual acts so as to render the person a menace to the health and safety of others . . . ." (*Id*., at p. 774.)

The Court addressed the United States Supreme Court holdings of *Kansas v. Crane* (2002) 534 U.S 407, and *Kansas v. Hendricks* (1997) 521 U.S. 346, in evaluating the adequacy of the instructions given under California law. (*Williams, supra,* 31 Cal.4th at pp. 774-775.) The Supreme Court was persuaded that a jury instructed in the language of the statute must necessarily understand the need for serious difficulty in controlling behavior, and that further instructions on lack-of-control were not necessary. (*Id*., at p. 774.)

The instruction embodied in CALCRIM No. 3454 tracks the statutory language by instructing the jury that it needed to find he has a diagnosed mental disorder, that as a result of that disorder he is a danger to the health and safety of others because it is likely he will engage in sexually violent predatory criminal behavior, and emphasized the need for a determination that defendant currently has such a diagnosed mental disorder. The instruction adequately conveys that defendant lacks volitional control over his impulses by reason of his diagnosed sexual disorder.

Because the instruction is proper, there was no error.

5.      *Defendant's Commitment As An SVP Did Not Violate His Equal Protection Rights.*

Defendant argues that his indeterminate commitment pursuant to the SVPA violated federal guarantees of equal protection. He asserts that such commitments

require like treatment for similarly situated persons unless the state establishes a compelling interest justifying disparate treatment, and that procedure requiring a committee to prove his suitability for release, unlike the civil commitment schemes for Mentally Disordered Offenders (MDOs), and persons found Not Guilty by reason of Insanity (NGIs), does not pass muster under strict scrutiny. We disagree.

The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. This initial inquiry is not whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) Neither the Fourteenth Amendment of the Constitution of the United States nor the California Constitution precludes classification by the Legislature or requires uniform operation of the law with respect to persons who are different. (*People v. Guzman* (2005) 35 Cal.4th 577, 591.) A strict scrutiny standard is used to measure claims of disparate treatment in civil commitments. (*People v. Green* (2000) 79 Cal.App.4th 921, 924.)

In *McKee I*, the California Supreme Court observed that while persons committed as MDO's (Pen. Code, § 2962) and SVP's do not share identical characteristics, they are similarly situated for the purpose of determining why one group received an indefinite

22

commitment and had the burden of proving they should not be committed, while the other group was subject to short-term commitment renewable only if the People periodically proved that continuing commitment was justified. (*McKee I, supra*, 47 Cal.4th at p. 1203.) The California Supreme Court remanded the SVP determination to allow the People to present evidence to support a basis for treating SVPs disparately.

Following remand and a subsequent appeal following proceedings at which the People presented substantial evidence "'notwithstanding the similarities between SVP's and MDO's [and NGI's], the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society.' [Citation.]" (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1347 (*McKee II*).)

More recently, in *McCloud* the First Appellate District, Division Two, relied on the findings set out in *McKee II* in rejecting the defendant's equal protection challenge. There, the court observed, "We need not repeat the evidence presented in the trial court and reviewed by the appellate court in *McKee II*. Both courts were satisfied that disparate treatment of SVP's was warranted. [Citation.] *McKee II* found substantial evidence to support a reasonable perception on the part of the electorate enacting the amended SVPA that the recidivism rate of released SVP's is greater than the rate of re-offense of other sex offenders; that the harm suffered by victims of sex offenses is greater than that caused by other types of offenses; that SVP's pose an increased risk of harm to children; that SVP's have significantly different diagnoses from those of MDO's and

NGI's; and that treatment plans, rates of compliance and success rates are significantly different. [Citation.]" (*McCloud, supra,* 213 Cal.App.4th at pp 1085-1086.)

We agree with the conclusion drawn by *McCloud* and do not need to repeat the evidence supporting the conclusion that there are significant differences between SVPs and other offenders suffering from mental disorders to warrant disparate treatment. Defendant has not shown that he would be able to introduce new or different evidence that would require a different result. (See *People v. Landau* (2013) 214 Cal.App.4th 1, 48; *People v. McDonald* (2013) 214 Cal.App.4th 1367, 1378; *People v. McKnight* (2012) 212 Cal.App.4th 860, 863-864 ["It is plain that *McKee II* is not to be restricted to Mr. McKee alone or only to those SVP'S convicted of crimes against children, like him, but rather its holding applies to the class of SVP's as a whole."].)

## DISPOSITION

The judgment of commitment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

HOLLENHORST
J.

McKINSTER
J.

24