Filed 4/17/26 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAM CLEARE et al.,<br><br>    Petitioners,<br>v.<br><br>SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>    Respondent;<br><br>WEST CONTRA COSTA COUNTY UNIFIED SCHOOL DISTRICT et al.,<br><br>    Real Parties in Interest | A173289<br><br>(Contra Costa County<br>Super. Ct. No. N24-01353)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on March 25, 2026, be modified as follows:

On page 13, in the third independent paragraph, delete the sentence that begins with the word "As" and ends with the word "requirement", and replace it with a sentence that reads as follows:

> "While there is evidence that the District applied for and apparently obtained some waivers from the Commission on Teachers Credentialing, we do not understand it to demonstrate that the District did all it could in this regard before that body or that the State Board of Education was ever approached."

1

With this modification, the paragraph now reads as follows:

As plaintiffs confirmed at the motion for new trial, they argued that "[the District] could have gotten—they should have, they were required legally to get a waiver, if they really have exhausted every other thing. To establish impossibility, it has to be . . . a real impossibility. [¶] They're required, if they've exhausted all efforts, to go to the commissioner of teacher credentials . . . [¶] . . . . [¶] . . . . [T]hey can go to the state agency and get a waiver or make their impossibility case there." While there is evidence that the District applied for and apparently obtained some waivers from the Commission on Teachers Credentialing, we do not understand it to demonstrate that the District did all it could in this regard before that body or that the State Board of Education was ever approached. Until this appears—indeed, until all other options are exhausted—the District cannot make a claim of impossibility, that is to say, the District cannot show that it has done everything possible and is still unable to assign credentialed instructors to classrooms.

This modification does not effect a change in the Judgment. (Cal. Rules of Court, rule 8.264(c)(2).)

The petition for rehearing is denied.

Dated:

_____
Stewart, P.J.

2

Superior Court of Contra Costa County

Hon. Benjamin T. Reyes, II and Hon. Terri Mockler

Counsel:

Munger, Tolles & Olson, Rohit K. Singla, Dane P. Shikman, Kyra Schoonover, Laura R. Perry; Public Advocates, John T. Affeldt, Karissa A. D. Provenza for Petitioners.

Laura P. Juran, Brian Schmidt for California Teachers Association; Rothner Seagall & Greenstone, Julia Harumi Mass for California Federation of Teachers Association, as Amici Curiae on behalf of Petitioners.

Megan Stanton-Trehan for Disability Rights California and Jinny Kim for Disability Rights Education and Defense Fund, as Amici Curiae on behalf of Petitioners.

Victor Leung for American Civil Liberties Union Foundation of Southern California and RYSE; Morrison & Foerster, Jack W. Londen as Amicus Curiae on behalf of Petitioners

No Appearance for Respondent.

Leone Alberts & Duus, Katherine A. Alberts for Real Parties in Interest.

Filed 3/25/26 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT et al., | |
| Petitioners, | A173289 |
| v. | (Contra Costa County Super. Ct. No. N24-1353) |
| THE SUPERIOR COURT OF CONTRA COSTA COUNTY, | |
| Respondent; | |
| SAM CLEARE et al., | |
| Real Parties in Interest. | |

This is a proceeding for mandate brought by four teachers seeking to compel the West Contra Costa Unified School District (District) to alter its practices for putting teachers in specified schools in the District, and to direct the District to comply with the statutory scheme governing the subject. At trial, the issue quickly became reframed as whether the District had established that compliance with the relevant statutes made it impossible to put enough qualified teachers in classrooms, thus excusing the District's non-compliance. The trial court answered this question in the District's favor.

We conclude the ruling must be set aside because the District failed to establish that it had unsuccessfully tried to comply with all of the governing statutory procedures for filling teacher vacancies. Unless and until the District carries that burden, it is premature to consider whether the doctrine

1

of impossibility will excuse the District's non-compliance with those procedures.

## BACKGROUND

### *Williams* and the Ensuing Litigation

In 2004, the State settled a class action lawsuit filed by the American Civil Liberties Union on behalf of lead plaintiff Eliezee Williams: *Williams v. State of California* (2003) Cal.Super.LEXIS 1063. The settlement provided for many things. As relevant here, parents or teachers were allowed to raise via a written complaint procedure the subject of "teacher vacancy or misassignment." This procedure was codified into Education Code section 35186, and is colloquially known as a "*Williams* complaint." (See Mahoney, *The Williams Complaint and the Role of the Learning Environment In Education Adequacy: "You Count; Do Well"* (2021) 62 B.C. L.Rev. 659, 679–680.)

Every school district was directed to have a "complaint form" in accordance with enabling regulations "to help identify and resolve any deficiencies related to instructional materials, emergency or urgent facilities conditions that pose a threat to the health and safety of pupils or staff, and teacher vacancy or misassignment." (Ed. Code, § 35186, subds. (a), (h); Cal. Code Regs., tit. 5, §§ 4680, 4682.) The District promulgated a "Complaint Form" explaining the "Williams Uniform Complaint Procedure."

### The General Setting

The District operates dozens of schools, doing so in a setting where the challenges are many, the resources meager. Three of the district schools figure here: Stege Elementary (Stege), Helms Middle School (Helms), and Kennedy High School (Kennedy). These schools illustrate some of the District's many problems, as described by the plaintiffs' opening brief that

2

begins its statement of facts with two paragraphs with which the District does not take issue. These are the two paragraphs:

Stege, Helms, and Kennedy "have been plagued by numerous teacher vacancies from Kindergarten to 12th Grade across a wide variety of subjects, including Math, Science, and English and with respect to teachers authorized to teach English Learners and students with disabilities. For years, the District has 'covered' these vacancies with unauthorized substitutes (i.e., substitutes teaching beyond their 30-day authorization), 'rolling' substitutes (i.e., a different substitute every 30 days), and/or other teachers trying to cover teacher-less classes on a day-to-day basis in addition to their own classes.

"Notably, these three schools have among the highest poverty rates (71-87%) in the District. Helms has one of the highest enrollments of English Learners (50%); Kennedy has the lowest graduation rate in the District (62%); and all three are significantly failing behind state Math and English standards."

**The *Williams* Complaints**

In January 2024, using *Williams* Complaints authorized by section 35186, four teachers at the affected schools— Sam Cleare, Sarah Kincaid, Jeremiah Romm, and Cristina Huerta (hereafter collectively "plaintiffs")— filed complaints about current teacher staffing practices, one of which, Cleare's, states it was "on behalf of 45 parents, students, and teachers." The common theme of the complaints was that the District was using "rolling substitutes" instead of "ensur[ing] that all classes are covered by a single designated certificated teacher," and, "when fully credentialed teachers are not available, to take advantage of the lawful options for staffing classrooms with permanent teachers who may not yet be fully certified." The complaints

sought various remedies, but the one relevant to this appeal was framed as follows: "[c]ease the illegal practice of using long-term substitutes to fill vacancies, and instead implement districtwide processes to recruit, hire, and assign permanent, legally authorized teachers in a timely manner and refine the teacher development and support programs to advance such processes, including supporting classified staff interested in a pathway to become a certified teacher."

The District was obligated to respond within 45 working days (Cal. Code Regs., tit. 5, § 4685), but it did not do so, not until April. The gist of its five-page response can be summarized as follows: the District acknowledged that it had, and has, "utilized long-term and day-to-day substitutes," and thus "is out of compliance" with state law. Nevertheless, the District advised plaintiffs, these practices would not be discontinued because "the District is currently unable to provide the requested remedies to the extent they require addressing statewide, systemic problems over which the District has little control." In short, the District was aware of the problem but asserted it was unable to correct it because a sufficient number of properly credentialed teachers simply could not be found and hired. As the trial court would later put it, apparently indicating its view of the District's position: "the few teachers that are coming out of credential programs. . . most of them unfortunately want to teach in places like Lafayette and San Ramon and Moraga and Orinda. They don't want to teach in Richmond."

Plaintiffs appealed to the District's Board of Education, but were unsuccessful.

**The Proceedings Below**

On July 19, 2024, plaintiffs filed a verified petition for traditional mandate (Code Civ. Proc., § 1085), declaratory, and injunctive relief, naming

4

the District and the members of its Board of Education. The gravamen of the petition was a restatement of the *Williams* Complaints justifying the court mandating the remedies sought by those complaints, presumably a halt to the District's practices of employing "rolling substitutes."

Neither side has included the District's answer to the petition, but from what we glean the District responded with the same justification: notwithstanding its best efforts, qualified teachers could not be hired, thus necessitating the unorthodox use of substitute teachers. The essence the District's position at all times is set out most compellingly in a declaration by its Associate Superintendent of Human Resources, who stated:

"Currently, we are recruiting for forty-five (45) open certificated teaching positions across the District's forty-five (45) K-12 schools . . .

"My staff and I have used and are using every means available to us to recruit teachers and fill all vacancies across the District. We list our openings on multiple job sites, such as Edjoin, Indeed, LinkedIn, EdCal, and EdWeek, and use paid advertising on social media. To recruit for the 2024-2025 school year, we attended 37 job fairs. We also have a partnership contract with Teach for America to attract teachers leaving this program to the District. We have partnership contracts with 35 universities whereby we attempt to recruit students to teach in the District. We also actively reach out to and advertise for credentialed retirees to return to the classroom. The District also takes advantage, as much as possible, of the exceptions and allowances in the Education Code for teachers, when they want to, to teach outside of their credential permissions to fill vacancies. . . .

"The District also has developed its own programs too [*sic*] assist people in becoming credentialed teachers. For example, the District has a Teacher in Residency Program through which an applicant with a bachelors' degree

5

who applies for and enrolls in a credential program at one of the District's partner universities is provided with tuition and living expenses support, a year-long placement with an experienced mentor teacher, and ongoing support for the first years of teaching. . . .

"The District also takes advantage of the Commission on Teacher Credentialing's intern programs. The CTC allows students who have completed a certain amount of their credentialing program to serve as full-time classroom teachers on an intern credential. Moreover, the District has a Provisional Internship Program that allows credential students who do not meet the requirements to enter an internship program to teach for one year [] as a provisional intern. . . .

"The District has also used the CTC's Short Term Staff Permit, which allows an individual who has the required level of subject matter course work to fill an . . . . acute staff need[,] defined as when the District needs to fill a classroom immediately based on an unforeseen need . . . ."

The matter came on for hearing where, according to an unsigned minute order in the record, the trial court accepted the Department's reasoning and denied the petition. The unsigned minute order is eight lines in length and provides in its substantive entirety, however redundantly, as follows: "As stated on the record, the Court having heard a lot of argument from both counsels denies the Writ of Mandate. The Writ of Mandate is denied. The teacher vacancies writ of mandate is denied. Further, the Court does not see a basis for the Writ of Mandate."

As to what apparently led to the minute order, these few lines are how the trial court ended the hearing: "So I think I have heard a lot of arguments, and I'm still where I began which is that the first issue with regards to Stege is moot, so the Writ of Mandate is denied. [¶] And as to the

teachers, the complaints about teacher vacancies, the court is also denying the writ.  I do not see that the defendant is refusing to comply with the law or refusing to fill these vacancies.  They're doing the best they can, so I do not see a basis for a Writ of Mandate."

The record indicates that somebody submitted a "proposed order and proposed judgment," but according to the very opaque register of actions, no formal order or judgment was in fact entered.

Plaintiffs moved for a new trial, which for some reason was denied by a different Judge.  And Plaintiffs filed a notice of appeal from the "Judgment after court trial."

## DISCUSSION

### Can We Consider the Matter?

"[A] reviewing court lacks jurisdiction on direct appeal in the absence of an appealable order or judgment."  (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 21.)  The point of jurisdiction is so fundamental that "[a] reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by Code of Civil Procedure section 904.1."  (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.)

California Rules of Court, rule 8.204, subdivision (2)(B) states that "[a]n appellant's opening brief must [¶] . . . [¶] [s]tate that the judgment appealed from is final, or explain why the order appealed from is appealable." But plaintiffs' opening brief does not heed the rule.  Nor did the District address it in its brief.

As noted, the minute order was not signed by anyone, and there is no indication that the trial court ruled on petitioners' causes of action for

7

injunctive and declaratory relief. Left to our own devices, we began exploring the problem of whether an appealable judgment or order was before us.

The initial complication was an entry in the register of actions that someone submitted a form of judgment. But no judgment was actually entered. Similarly, at the conclusion of the mandate hearing, the trial court directed counsel for the District to prepare an order for its signature. There is no indication the District did so. So we are left with just the unsigned minute order.

Our initial research as to whether the unsigned minute order was appealable was inconclusive. On one hand, there is elderly authority that when no further judicial action is contemplated, it might be. (See *Steen v. Board of Civil Service Comm'rs.* (1945) 26 Cal.2d 716, 727; *Covina-Azusa Fire Fighters Union v. City of Azusa* (1978) 81 Cal.App.3d 48, 56; *Holden v. California Employment Stabilization Com.* (1950) 101 Cal.App.2d 427, 430.) However, there are two insurmountable impediments.

The first difficulty is that further judicial action *was* clearly contemplated, either with the order the trial court presumably intended to sign when received from the District, or with the judgment submitted after the different Judge denied the District's new trial motion.

The second difficulty came into focus only upon receipt of supplemental briefing we had requested. We had assumed from the original briefs that the parties treated the trial court's rejection of the petition for mandate cause of action as effectively denying the other causes of action, thus effectively terminating trial proceedings. In such circumstances the order might be appealable. (See *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698—700.) This assumption was submarined when the District advised us that the other causes of action—for declaratory and injunctive relief—

8

remained outstanding. That means that, at best, we confront only a partial, interlocutory, non-final, non-appealable ruling. (*Id.*, at p. 697; accord, *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1101.)

Thus, our tentative conclusion was to follow the recent pronouncement by our Supreme Court that "the time to appeal in administrative mandate proceedings begins with the entry of 'judgment' or service of notice of entry of 'judgment,' not with the filing of an 'order' or other ruling, or service of notice of filing of such a ruling, *even where an appellate court might deem such a ruling appealable in order to vindicate the right of appeal.*" (*Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 657, italics added.)

As indicated, we ordered the parties to submit supplemental briefing on the appealability issue. In light of what we have learned, we must conclude that no appealable order or judgment is currently in existence.

The District urges us to treat the non-compliance with Rule 8.204 as sufficient by itself to justify dismissal of the appeal. We do not believe such an extreme reaction is warranted.

Our Supreme Court has stated that "A petition for a writ, not an appeal, is the authorized means for obtaining review of judgments and orders that lack the finality required by Code of Civil Procedure section 904.1, subdivision (a)." (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743–744.) More to the point, it allows that a reviewing court may treat a defective appeal as a petition for an extraordinary writ, although it cautioned that this should be done only in "unusual circumstances." (*Olson v. Cory* (1983) 35 Cal.3d 390, 400–401.) Plaintiffs urge us to save them by adopting this mechanism. We shall do so, deeming the following circumstances sufficient to validate the normal practice of dismissing a purported appeal from a non-appealable order.

9

(1)  The issue of whether the District's lack of compliance with statutory staffing requirements is justified has been addressed in the extensive briefs filed by the parties and by the amici drawn to the perceived importance of the controversy.  (See *Morehart v. County of Santa Barbara, supra*, 7 Cal.4th at p. 746 ["The merits of those issues not only have been briefed by the parties . . . but also have been thoughtfully addressed by a diverse group of amici curiae."].)[1]

(2)  To return the matter to the trial court would almost certainly be, in the Supreme Court's words, " ' "unnecessarily dilatory and circuitous. " ' " (*Olson v. Cory, supra*, 35 Cal.3d at p. 401.)  It would seem to be a virtual certainty that in light of the ruling on the mandate cause of action, plaintiffs would not obtain declaratory relief that the District is in violation of state law and the District enjoined from continuing that violation.  Equally certain is that plaintiffs would again appeal.  This would entail a waste of judicial time and resources at two levels.

(3)  "The fact that the trial court is not a party is not an insuperable obstacle since there is no indication that the court as respondent would appear separately or become more than a nominal party." (*Olson v. Cory, supra,* 35 Cal.3d at p. 401.)

(4)  Most importantly, the trial court has endorsed a possibly untenable conclusion that cries out for the speediest resolution.  As will be shown, the District may be operating under procedures that are contrary to state law.  Unless promptly addressed, the continuance of that state of affairs would

---

[1]     We granted leave to permit filing of three amicus briefs, on behalf of: The American Civil Liberties' Union of Southern California and RYSE; California Teachers Association and California Federation of Teachers; Disability Rights California and Disability Rights Education & Defense Fund.

have an adverse impact on students and staff in a public school district. (See *Litmon v. Superior Court* (2003) 123 Cal.App.4th 1156, 1166.) This is clearly a matter of the gravest public importance, which "cries out for immediate appellate review." (*Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 651.) Delay is not a real option when the quality of children's education is at issue. Parenthetically, this is why we will not simply dismiss the appeal, as the District suggests, because dismissal would leave that ruling in place until proceedings in the trial court could resume and conclude, thereby permitting a new appeal. (Cf. *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134 [Supreme Court declined to dismiss an appeal because it would amount to affirmance of a compromised ruling].)

In compliance with Code of Civil Procedure section 1088 and *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, the parties have been notified that we may order issuance of a peremptory writ in the first instance.

### Denial of the Writ Was Error

Petitioners have filed a 75-page opening brief that has one argument: the trial court erred in denying the writ "based on the purported 'impossibility.' " The argument has two subparts: (1) there is no impossibility defense to the teacher certification and *Williams* regimes, and (2) the District failed to carry its burden to show impossibility in any event. We agree with the second subpart.

As we see it, the issue before us is simple and straightforward. The importance of public education is beyond question—or need of justification. Central to its function is the belief that knowledge should be imparted by qualified instructors. As quoted, California law mandates the District's duty to fill every classroom with a permanent, and qualified, teacher for the school year. (Ed. Code, §§ 35186, subd. (h)(3), 44225.7, 44830, subd. (a).) Substitute

11

teachers may be used for no more than 60 days.  (Cal. Code Regs., tit. 5, §§ 80025, 80025.1.)

Yet the Legislature did not mandate inflexible rigidity in hiring only currently credentialed teachers.  And the difficulty of hiring sufficient numbers of teachers is manifest, for example, by the recent legislative change that authorized the hiring of retired teachers.  (See Stats. 2023, ch. 885, § 3, adding Ed. Code, § 24214, subd. (f).)  Another option is a district with a teacher shortage may use what the parties call "university interns" for up to four years.  (E.g., Ed. Code, §§ 44225, 44256, 44263, 44325, 44328, 44527, 44258.2, 44258.3, 44258.7, 44452, 44453, 44455.)  Various other one-year options are also available.  (See Cal. Code Regs., tit. 5, §§ 80022—80023.1.)  And credentialed teachers can be reassigned from administrative and other non-teaching positions.  (Ed. Code, §§ 35035, subd. (e), 44258.3.)

Finally, if all else fails, there are a number of special permits and short-term renewable waivers from statutory teacher certification requirements that a district may request from either the Commission on Teaching Credentialing or the State Board of Education.  There is even provision for "emergency teacher permits" in times of recruitment shortages.  (Ed. Code, §§ 44225.7, 44300.)  As to the former, see Education Code section 44225, subdivision (m); California Code of Regulations, title 5, sections 80120 to 80125; Commission on Teacher Credentialing Ensuring Teacher Quality, *Waiver Requests Guidebook* (rev. ed. 2024) <https://www.ctc.ca.gov/credentials/manuals> (as of March 25, 2026).  As to the latter, see Education Code sections 44669, 44685, 52178, and 54407.  All this was urged by plaintiffs below.

12

As noted, the hearing quickly became focused on the issue of impossibility, leading to the trial court's denial of the writ. That denial was error in the circumstance here—at best, premature.

Impossibility is in the nature of an affirmative defense and, as such, up to the party claiming it to prove. (E.g., Evid. Code, § 500; *Abrams v. Motter* (1970) 3 Cal.App.3d 828, 839; *Rench v. Watsonville Meat Co.* (1956) 138 Cal.App.2d 482, 489.) This burden of proof required the District to establish that all lesser options had been tried and found wanting. (See *Lloyd v. Murphy* (1944) 25 Cal.2d 48, 54.) As one court tersely put it in point-blank fashion: "We cannot say that it is impossible until it has been tried." (*Board of Supervisors v. McMahon* (1990) 219 Cal.App.3d 286, 303.)

As plaintiffs confirmed at the motion for new trial, they argued that "[the District] could have gotten—they should have, they were required legally to get a waiver, if they really have exhausted every other thing. To establish impossibility, it has to be . . . a real impossibility. [¶] They're required, if they've exhausted all efforts, to go to the commissioner of teacher credentials . . . [¶] . . . . [¶] . . . . [T]hey can go to the state agency and get a waiver or make their impossibility case there." As to this, there is nothing in the record establishing that the District ever asked either the Commission on Teaching Credentialing or the State Board of Education for any waiver of statutory teacher credentialing requirements. Until this appears—indeed, until all other options are exhausted—the District cannot make a claim of impossibility, that is to say, the District cannot show that it has done everything possible and is still unable to assign credentialed instructors to classrooms.

We are not insensitive to the demands on a public school district where the needs are many and the money scarce. Innovation and unorthodox

13

thinking may be necessary, even commendable. But here we deal with *the* core function and duty of a public institution—teaching. Moreover, that function is the subject of an extensive statutory scheme whose very detail severely restricts the scope for local improvisation.[2] In sum and in short, the statutory provisions must be followed until they have been exhausted and found wanting. The District did not establish that matters have come to that point. Until it does, the doctrine of impossibility is not available.

In light of the foregoing, there is no need to consider whether error also attended the denial of plaintiffs' new trial motion.

## DISPOSITION

Let a peremptory writ of mandate issue commanding the Superior Court of Contra Costa County to vacate the minute order denying the petition of mandate and to enter a new order denying the petition. The parties shall bear their respective costs.

---

[2] In fact, the Legislature may be said to have occupied the field. (See *Butt v. State of California* (1992) 4 Cal.4th 668, 689 and authorities cited [characterizing the State's role as "pervasive"].)

_____
                    RICHMAN, J.

We concur.


_____
STEWART,  P.J.


_____
DESAUTELS, J.


(A173289P)

Superior Court of Contra Costa County

Hon. Benjamin T. Reyes, II and Hon. Terri Mockler

Counsel:

Leone Alberts & Duus, Katherine A. Alberts for Petitioners.

No Appearance for Respondent.

Munger, Tolles & Olson, Rohit K. Singla, Dane P. Shikman, Kyra Schoonover, Laura R. Perry; Public Advocates, John T. Affeldt, Karissa A. D. Provenza for Real Parties in Interest.

Laura P. Juran, Brian Schmidt for California Teachers Association; Rothner, Seagall & Greenstone, Julia Harumi Mass for California Federation of Teachers, as Amicus Curiae on behalf of Real Parties in Interest.

Megan Stanton-Trehan for Disability Rights California and Jinny Kim for Disability Rights Education and Defense Fund, as Amicus Curiae on behalf of Real Parties in Interest.

Victor Leung for American Civil Liberties Union Foundation of Southern California and RYSE; Morrison & Foerster, Jack W. Londen as Amicus Curiae on behalf of Real Parties in Interest.

16